**MECHANICS LAUNDRY & SUPPLY, INC., Appellant–Plaintiff,**

v.

**WILDER OIL CO., INC. d/b/a Union 76 and Fred Perry d/b/a Union 76, Appellees–Defendants.**

No. 49A05–9110–CV–320.

Court of Appeals of Indiana, Fifth District.

July 21, 1992.

Rehearing Denied Aug. 27, 1992.

Robert A. Mucker, Gambs, Mucker, Bauman & Seeger, Lafayette, for appellant-plaintiff.

J. William Bruner, Boonville, Theodore Lockyear, Evansville, Robert J. Doyle, Indianapolis, for appellees-defendants.

SHARPNACK, Judge.

Plaintiff Mechanics Laundry & Supply, Inc., ("Mechanics") filed this breach of contract action against defendants Wilder Oil Co., Inc., ("Wilder") and Fred Perry ("Perry") in the Marion County Municipal Court pursuant to a purported contract provision that provided that Marion County would be the venue for any dispute arising out of the contract. Both defendants filed motions for change of venue to Warrick County pursuant to Ind.Trial Rule 75. The trial court granted the change of venue, and Mechanics filed this interlocutory appeal contesting the trial court's order transfer-

ring the case from Marion County to Warrick County. We reverse.

On appeal, Mechanics raises the following restated issues:

(1) Whether agreements which purport to exclude venue other than the venue specifically named and which relate to the adjudication of controversies that may arise in the future are enforceable.

(2) Whether the trial court erred by not considering the alleged contract between the parties to be a valid contract on the date of the hearing concerning the motions to transfer for improper venue when the defendants did not deny the execution of the alleged contract either under oath in a responsive pleading or by affidavit.[1]

Mechanics allegedly entered into a contract with Union 76 in Evansville, Indiana, whereby Mechanics was to lease, launder and otherwise maintain certain textile goods for Union 76 in return for payment. In his capacity as manager of Union 76, Perry signed the alleged contract with Mechanics.

The following paragraph was included in the terms and conditions of the contract:

17. This Agreement is entered into under the laws of the State of Indiana and shall be construed thereunder and any cause of action arising between the parties whether under this Agreement or otherwise shall be brought only in a court located in Marion County, Indiana and having venue and jurisdiction over the home office of Company in Marion County, Indiana. The Customer, by this paragraph, waives any entitlement he might otherwise have to a transfer of venue under the preferred venue requirement of Trial Rule 75 of the Indiana

---

1. We summarily address the third issue which Mechanics raised in its brief, which is whether the parties stipulated pursuant to T.R. 75(A)(6) that venue would be in Marion County. Pursuant to T.R. 75(A)(6), preferred venue lies in the "county or court fixed by written stipulation signed by all the parties named in the complaint or their attorneys and filed with the court before ruling on the motion to dismiss...." According to the record, Mechanics filed no such written stipulation with the court at any time. Mechanics asserts, without authority, that the alleged contract at issue in this case serves as a written stipulation pursuant to T.R. 75(A)(6). The contract does not meet the requirements set out in T.R. 75(A)(6) because one of the parties named in Mechanics' complaint, (Wilder Oil Co.), did not sign the alleged contract. Under these circumstances, T.R. 75(A)(6) provides no basis for venue in Marion County in this action.

Rules of Trial Procedure or under the Federal Rules of Civil Procedure. (Record, p. 9.)

Mechanics filed a complaint against Wilder and Perry, contending that, while Mechanics had performed all of its obligations under the alleged contract, Wilder and Perry, doing business as Union 76, had failed and refused to abide by the alleged contract's provisions and had in effect unilaterally cancelled the alleged contract. Mechanics requested from Wilder and Perry damages, prejudgment interest and attorney's fees.

In response to Mechanics' request for admissions, Wilder, by counsel, denied the truth of all matters set forth in Mechanics' request, denied that it had entered into a contract with Mechanics, and denied the truth of the provisions in the alleged contract between the two parties. In his response to Mechanics' request for admissions, Perry, by counsel, also denied the truth of all matters set forth in Mechanics' request, denied that he had ever entered into a contract with Mechanics, and stated that he had never discussed with Mechanics the terms and conditions of the alleged contract. Perry admitted that he did business in Indiana as Fred Perry, d/b/a Union 76, and stated that his relationship with Wilder was conducted on an independent contractual basis.

Perry further stated that neither he nor Wilder had entered into any contract with Mechanics and that Mechanics' assertion to the contrary was fraudulent and without basis. According to Perry, he had simply signed a document which he believed was an order for the rental of certain goods from Mechanics. Perry further stated that, because the goods provided by Mechanics were unsatisfactory, defective and not of the quality he needed in his business, he discontinued rental of the goods from Mechanics. Perry admitted that he had an outstanding bill due to Mechanics for $27.41 and agreed that Mechanics is entitled to prejudgment interest on this unpaid amount at the rate of 18% per year.

Mechanics first argues that contract provisions which specify a particular venue for actions based on the contract are enforceable. Wilder responds that such provisions violate public policy and are unenforceable.

The current trend appears to be that contractual provisions, even those occurring in form contracts, that seek to limit the litigation of future actions to particular courts or places are enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court.

The most recent case dealing with this issue is *Carnival Cruise Lines, Inc. v. Shute* (1991), 499 U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622. In *Carnival,* the Supreme Court held that the Court of Appeals had erred in refusing to enforce the following forum selection clause:

"8. It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country."

*Id.,* 499 U.S. at ——, 111 S.Ct. at 1524, 113 L.Ed.2d at 628.

The relevant facts of *Carnival* are as follows. A Washington couple, the Shutes, bought tickets through a Washington travel agent for a round-trip cruise from Los Angeles, California to Puerto Vallarta, Mexico on board the Tropicale, a ship owned by Carnival Cruise Lines, Inc. Carnival prepared the tickets and sent them to the Shutes in the state of Washington. Each ticket contained "terms and conditions," which included the above-mentioned forum selection clause.

While in international waters off the coast of Mexico, Ms. Shute fell during a guided tour of the galley. The Shutes subsequently filed a claim in federal district court in Washington claiming that the injuries Ms. Shute had sustained were caused by Carnival's negligence. Carnival moved for summary judgment, arguing that, pursuant to the forum clause contained within their tickets, the Shutes were required to

bring suit in a Florida court. While Carnival prevailed at the District Court level, the Court of Appeals reversed holding that, among other things, the forum clause at issue should be considered unenforceable because the clause had not been freely bargained for. The appellate court independently justified its holding by noting that, according to the record, the Shutes were physically and financially incapable of pursuing the litigation in Florida and the Shutes would be deprived of their day in court if the forum clause were enforced. The appellate court based its justification on *The Bremen v. Zapata Off–Shore Co.*, (1972), 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513.

The Supreme Court reversed the Court of Appeals, holding that the appellate court erred when it refused to enforce the forum selection clause. The Supreme Court first distinguished *The Bremen* from *Carnival*, finding such key factual differences between the two that an automatic and simple application of *The Bremen's* general principles was precluded.[2] The Court went on to say that including a forum selection clause in a form contract may be permissible for several reasons, including:

(1) to limit the fora in which a cruise line potentially could be subject to suit;

(2) to dispel any confusion about where suits arising from the contract must be brought and defended, sparing parties the time and expense of pretrial motions to determine the correct forum, thereby conserving judicial resources otherwise devoted to deciding those motions; and,

(3) to pass on benefits to the passengers in the form of reduced fares reflecting the savings that a cruise line would enjoy by limiting the fora in which it may be sued.

*Carnival,* 499 U.S. at ——, 111 S.Ct. at 1527, 113 L.Ed.2d at 632.

Because venue selection clauses have not yet been addressed by Indiana courts, we look to other states that have considered the issue. We have found the following cases in which courts have approved agreements between intrastate parties who have contracted to litigate future contractual disputes in specific state counties: *Meka Construction Corp. v. Village Mall of Port Orange, Ltd.* (1985), Fla.App., 469 So.2d 838; *Fine v. Carney Bank* (1987), Fla.App., 508 So.2d 558; and *Montana Wholesale Accounts Service v. Penington* (1988), 233 Mont. 72, 758 P.2d 759.

■ Decisions of our own courts convince us that we should follow the Florida and Montana courts. We have repeatedly held that parties may consent by contract to the exercise of personal jurisdiction by courts that otherwise might not have such jurisdiction. In *Tandy v. Milam* (1990), Ind.App., 555 N.E.2d 174, exercise by a Texas court of personal jurisdiction over an Indiana resident pursuant to a provision in a leasing agreement was upheld. Writing for the second district, Judge Shields cited various Supreme Court cases, including *The Bremen* and *Burger King v. Rudzewicz* (1985), 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528, and stated that "the Supreme Court [has] concluded there are no due process impediments to a contractual consent to jurisdiction provision provided the agreement is, in its words, freely negotiated and the provision is not unreasonable and unjust." *Tandy,* 555 N.E.2d at 176. Noting that Texas courts had not yet addressed the validity of consent clauses under Texas law, our appellate court pointed out that the parties involved assumed Texas courts would follow the general view that such clauses were not

**2.** *Bremen* involved a "far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea." *Carnival,* 499 U.S. at ——, 111 S.Ct. at 1527, 113 L.Ed.2d at 631. The *Bremen* Court determined that it was entirely reasonable to have expected the parties there to have negotiated with care in selecting a forum for the resolution of potential disputes that may have arisen from their special towing contract. In *Bremen,* the Supreme Court stated that "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved [in *Bremen* ], should be given full effect." 407 U.S. at 12–13, 92 S.Ct. at 1914–1915 (footnote omitted).

per se invalid and might be enforced if, after considering the facts of each case, the consent clauses met the extremely fact sensitive *Bremen* test, (that is, whether the subject forum selection provision was obtained through a freely negotiated agreement and not unjust and unreasonable). *Id.*

In *Kimco Leasing, Inc. v. Ransom Junior High School* (1990), Ind.App., 556 N.E.2d 1371, the third district reversed the dismissal under Ind.Trial Rule 12(B)(6) of a complaint against a North Carolina high school and upheld jurisdiction pursuant to a provision in the lease agreement which was the subject of the action. Judge Staton, writing for the appellate court, ordered Kimco's action reinstated, and stated that a party to a lease could consent to personal jurisdiction if a trial court had subject matter jurisdiction. *Id.* In its analysis, the appellate court cited *Bremen* and stated that the party who opposes the enforcement of a forum selection clause must clearly show that enforcement of the clause would be both unreasonable and unjust, or that the clause was invalid due to fraud or overreaching. *Id.* The court found no "compelling and countervailing reason" to avoid that to which the school had agreed, i.e., submitting themselves to the jurisdiction of the Allen County courts. *Id.* The court found of no consequence the school's argument that the principal had not necessarily been an experienced or sophisticated businessman when he entered into the agreement because the court found no evidence that any negotiations had ever been attempted on the jurisdiction provision at issue. *Id.* at 1372, n. 1.

■ We hold that contractual provisions, even those occurring in form contracts, that seek to limit the litigation of future actions to particular courts or places are enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court. In the usual case, no public policy reason exists to preclude parties from establishing venue by a contractual provision.

Under the reasonableness standard, the trial court retains the discretion to change venue when justice so requires. While the policy considerations governing contractual provisions concerning personal jurisdiction are far stronger than those which would govern venue selection, it is well established that personal jurisdiction may be contracted.

Mechanics next argues that the trial court erred when it found that the contract appended to the complaint was not a valid contract. Wilder contends that the document appended to the contract was not a legally binding contract.

Mechanics brought this action against Wilder and Perry for breach of a written contract which contained the venue clause in issue. Wilder denied that it had made such a contract. After a hearing on the parties' motions to transfer for improper venue pursuant to T.R. 75(A), the Municipal Court of Marion County venued the case to Warrick County. According to the case activity report, Mechanics filed a motion for a stay of the court's order to transfer and filed this appeal. Mechanics argues that, because Wilder did not deny the execution of the contract under oath in a responsive pleading or by affidavit, the trial court erred by not considering the alleged contract between the parties a valid contract at the hearing on the motions to transfer.

We begin our analysis of this issue by looking first to the following portions of T.R. 9.2 concerning pleadings and proof of written instruments:

"**(A) When instrument or copy must be filed.** When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading. Such instrument, whether copied in the pleadings or not, shall be taken as part of the record.

**(B) Proof of execution of instruments filed with pleadings.** When a pleading is founded on a written instrument and the instrument or a copy thereof is included in or filed with the pleading, execution of such instrument, in-

dorsement, or assignment shall be deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an affidavit filed therewith....

**(C) Oath or affidavit of denial of execution must be made upon personal knowledge.** An oath or affidavit denying execution as required and made under subdivision (B) of this rule shall be made upon the personal knowledge of the person making it, and, if general in form (Rule 11(B)), shall be deemed to be made upon such personal knowledge.

**(D) Burden of proving execution.** The ultimate burden of proving the execution of a written instrument is upon the party claiming its validity, but execution is presumed. "Presumed" means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence....

\* \* \* \* \* \*

**(H) 'Execution' of a written instrument.** 'Execution' of a written instrument includes the following requirements:

(1) That a signature was made with express, implied or apparent authority and was not forged;

(2) That the instrument was properly delivered, including any requisite intent that it be effective;

(3) That the written terms of the instrument have not been materially altered without the express, implied or apparent authority of the person bound thereon;

(4) That the person seeking its enforcement is in possession of the instrument when required; and

(5) That the names or identity of the persons named in the instrument are correct."

■ Because Mechanics' pleading is founded on a written instrument, Mechanics complied with T.R. 9.2(A) by filing a copy of the alleged contract with its com-

plaint. As such, the alleged contract became a part of the record and execution of the instrument was deemed established pursuant to T.R. 9.2(B). Unless Wilder and Perry denied execution of the alleged contract under oath in a responsive pleading or by affidavit, the alleged contract was deemed admitted into evidence without proving its execution. Pursuant to T.R. 9.2(D), the trier of fact must have presumed execution unless and until Wilder and Perry introduced evidence supporting a finding otherwise. According to the record, Wilder and Perry did not do so.

■ Wilder argues that its motion to transfer for improper venue constituted a proper responsive pleading as required by T.R. 9.2. We disagree because a motion to transfer for improper venue is not a pleading pursuant to T.R. 7. According to T.R. 7:

"**(A) Pleadings.** The pleadings shall consist of:

(1) A complaint and an answer;

(2) A reply to a denominated counterclaim;

(3) An answer to a cross-claim;

(4) A third-party complaint, if a person not an original party is summoned under the provisions of Rule 14; and

(5) A third-party answer.

No other pleadings shall be allowed...."

■ Along the same lines, Wilder makes the assertion that, both because it denied any intention to contract with Mechanics in its response to Mechanic's request for admissions and because its counsel signed the response as allowed by T.R. 36 governing requests for admissions, it negated any need to comply with T.R. 9.2(B). Wilder's argument here lacks merit. As T.R. 9.2(B) states, denial of the execution of an instrument must be made "under oath in the responsive pleading or by affidavit filed therewith." Wilder's response to Mechanics request for admissions does not satisfy the criteria set out in T.R. 9.2(B).

■ In addition, according to T.R. 9.2(C), an oath or affidavit denying execution under this rule must be made upon the per-

sonal knowledge of the person making it. According to the Civil Code Study Commission Comments:

"[T]he charge of non-execution is extremely serious and should be supported by the affidavit of some person based upon his personal knowledge. The idea here is that the oath or affidavit should be made by a person who would qualify as a witness and whose testimony would be reliable. It should be noted that the oath or affidavit need not be made by a party. An affidavit in the form specified in Rule 11(b) is adequate, but the person signing it represents that the statement is made upon his personal knowledge."

Civil Code Study Commission Comments, 1 W. Harvey, Indiana Practice at 528 (1987).

T.R. 11 deals with the signing and verification of pleadings. Pursuant to T.R. 11:

"**(B) Verification by affirmation or representation.** When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:

'I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

(Signed) _____,'

Any person who falsifies an affirmation or representation of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit.

**(C) Verified pleadings, motions, and affidavits as evidence**.... Affidavits ... in denial of execution under Rule 9.2 shall be made upon personal knowledge."

Thus, while T.R. 9.2(C) considers as adequate an affidavit in the form specified in T.R. 11(B), the person signing the affidavit must represent that the statement is made upon personal knowledge in accordance

with T.R. 11(C), and must affirm the truth of the matter being verified by using the language set out in T.R. 11(B). As the court of appeals stated in *State ex rel. Ind. State Bd. of Dental Exmrs. v. Judd*, (1990), Ind.App., 554 N.E.2d 829, 831 "[t]he language used in a verification is important because the fundamental purpose of verification is to subject the petitioner to the penalties for perjury." Neither defendants' attorney used language that affirmed the truth of the responses in responding to Mechanics' request for admissions. Instead, both attorneys merely affixed their names as attorneys for the respective defendants on the requests for admissions. Because neither counsel for defendants filed an affidavit, much less an affidavit in the form specified in T.R. 11(B), Wilder's argument here must fail.

▆ Wilder also argues that the alleged contract is not before this court because the instrument was not admitted as evidence at the hearing. Again, this argument by Wilder fails because T.R. 9.2(A) and (B) provide otherwise. T.R. 9.2(A) states that a copy of the instrument filed with the pleading shall be taken as part of the record and T.R. 9.2(B) states that an uncontested instrument, as was the case here, shall be deemed admitted into evidence without proving its execution.

▆ Finally, Wilder contends that it, particularly, should not be required to comply with T.R. 9.2(B) because its name is not on the alleged contract with Mechanics and because Mechanics has not demonstrated that Perry, whose name is on the instrument, had any relationship to Wilder.[3] Even assuming that there was no relationship shown between Wilder and Perry, we would find that Wilder must comply with the rule. Trial Rule 9.2 is designed to handle this very situation. Pursuant to T.R. 9.2(H), "execution" includes both that a signature was made with express, implied or apparent authority and that the names or identity of the persons named in the instrument are correct. By complying with

---

**3.** Perry seems to dispute Wilder's contention here when he states in his response to Mechanics' request for admissions that "the relationship between himself and Wilder Oil Co., Inc., d/b/a Union 76 is that of an independent contractual relationship." (Record, p. 30.)

T.R. 9.2(B), Wilder may effectively deny execution of the alleged contract. Further, Wilder may pursue the proper remedies at law to recover costs and attorney's fees in a reasonable amount should Mechanics' lawsuit turn out to be frivolous or malicious in nature.

According to the record, the following discourse took place at the hearing concerning this issue:

> "*MR. MUCKER [for Mechanics]:* But they don't admit that there's a contract, Your Honor. They deny there's a contract on the Request for Admission.
>
> *THE COURT:* Okay. Yeah.
>
> *MR. MUCKER:* And our position is to satisfy 9.2 they have to do it by Affidavit or by, uh, '... it shall be deemed admitted in evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an Affidavit.' So until that's done, it's a contract. It's duly executed.
>
> *THE COURT:* [T.R. 75] says 'The Court, from allegations of the complaint or after hearing evidence thereon or considering affidavits or documentary evidence filed with the motion [to dismiss allowed by Rule 12(B)(3) ] or in opposition to it shall ordered [sic] the case transferred to a county or Court elected by the party first properly filing such motion.' [Mechanics] alleged a contract. In their Request for Admission, [Wilder and Perry] denied the contract.
>
> *MR. MUCKER:* But not according to the Rules. You can only deny the contract under 9.2.
>
> *THE COURT:* That's in the terms of an Answer. That applies to an Answer.
>
> *MR. MUCKER:* Then they should have waited until their Answer, Your Honor, because it says until that is done it is deemed duly executed and admitted into evidence. So it's admitted into evidence in this case. They could have filed an Affidavit that denied the contract.
>
> *THE COURT:* They're allowed under Rule 76 '... upon the filing of a pleading or a Motion to Dismiss ...' —under 12(B)(3)—'the Court ... shall order the case transferred.' So they're given an option. I mean this Court—this Rule doesn't say they have to file an answer first before they can attack venue.
>
> *MR. MUCKER:* That's true, but if they don't, then 9.2 steps in when it's on a contract. 9.2 puts it in evidence in this case. 9.2 says it can't be denied unless you file an Affidavit or a responsive answer under oath. It doesn't say just for the trial of the case. It says introduced into evidence.
>
> *THE COURT:* Well, I'm going to hold that the Request for Admissions is sufficient, because that's a judicially-established fact. Whether it's procedurally, uh, follows 9.2 or not is of, I don't think, any consequence. It doesn't matter."

(Record, pp. 45–47.)

The trial court abused its discretion when it determined that it did not matter whether the defendants denied execution of the alleged contract by way of oath in a responsive pleading or by affidavit. Pursuant to T.R. 9.2, it does matter. Because Wilder and Perry did not deny execution of the alleged contract as required, execution of the alleged contract was established and the trier of fact was required to presume its existence and to give credence to the contract's provisions, including the provision concerning venue, in the absence of a determination that the venue clause was unreasonable or unjust under the circumstances. By not so doing, the trial court erred.

The trial court erred in refusing to enforce the venue provision of the contract. We reverse and remand this action to the Marion County Municipal Court with instructions to resume jurisdiction in this matter.

REVERSED AND REMANDED WITH INSTRUCTIONS.

RUCKER, J., concurs.

BARTEAU, J., dissents with opinion.

BARTEAU, Judge, dissenting.

I respectfully dissent. I cannot agree with the majority that the contract provision at issue here is necessarily enforce-

able. I say "necessarily" because I believe it is premature to make such a decision. The trial court did not address the issue whether the clause was enforceable. As the majority points out, such a determination is very fact sensitive. *See The Bremen v. Zapata Off-Shore Co.* (1972), 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513. The change of venue in this case was granted because Warrick County is a preferred venue and, also, because the validity of the contract itself was challenged, the trial court did not consider the effect of the venue selection clause.

Assuming for the moment the validity of the contract, we cannot say that the venue selection clause is enforceable without establishing whether the contract provision was freely negotiated and unaffected by fraud, undue influence, or overwhelming bargaining power. *Bremen, supra.* Contrary to the majority's implication, *Carnival Cruise Lines, Inc. v. Shute* (1991), 499 U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622, does not hold that a forum selection clause in a form contract is always permissible even though not negotiated. Whether the clause was negotiated is one factor weighed against others. In *Carnival*, other factors (cited by the majority, at 251) weighed more heavily toward enforcing the clause. I do not believe those factors are present here. While I do not go so far as to say that a venue selection clause in a form contract is never enforceable, I do believe it is necessary to show that the party challenging the provision had notice of it and was not compelled to accept it by fraud, undue influence or overwhelming bargaining power.

Until a trial court has addressed the issue whether this particular contract provision is enforceable in this particular case, we should refrain from making a determination.

I also cannot agree with the majority's conclusion that the validity of the contract was not effectively challenged. I agree with the majority that a responsive pleading was not filed by Wilder or Perry. However, the question that must be answered is whether the presumption of a validly executed contract exists as soon as the complaint with the contract attached is filed, or, when a responsive pleading is filed that does not deny the execution. I believe that the better approach is to read T.R. 9.2(B) such that the valid execution of a contract is not presumed until a responsive pleading is filed that does not deny execution in accordance with T.R. 9.2(B), or perhaps until the time permitted for filing a responsive pleading has run without a response being filed. This approach retains the substance of T.R. 9.2(B), which clearly contemplates a responsive pleading being filed, and also accommodates those situations, such as the one here, where the execution of a contract is challenged prior to filing a responsive pleading denying the execution as required by T.R. 9.2(B). Specifically, here, for purposes of the motion for change of venue, valid execution of the contract should not be presumed because T.R. 9.2(B) does not come into play until a responsive pleading is filed. Mechanics, in order to oppose the change of venue, should be required to prove the contract was validly executed. Mechanics did not do this.

The trial court here did not reach the issue of the enforceability of the venue selection clause because the validity of the contract itself had been challenged. Thus, the trial court properly granted the motion and transferred the case to Warrick County, a county of preferred venue. It should be for the Warrick County court to determine if the contract itself is valid and, if so, whether the venue clause is enforceable.