**MASTER COPY & REPRODUCTION CENTER, INC., d/b/a Master Copy Design & Production Center, Appellant,**

v.

**COPYRITE, INC., Ikon Capital, Inc., and Ikon Office Solutions, Inc., Appellees.**

No. 49A02–0008–CV–507.

Court of Appeals of Indiana.

June 8, 2001.

Mark Small, Indianapolis, Indiana, Attorney for Appellant.

Karen L. Kovalsky, Barnes & Thornburg, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Master Copy & Reproduction Center, Inc., d/b/a Master Copy Design & Production Center ("Master Copy"), appeals the trial court's judgment in favor of Copyrite, Inc., Ikon Capital, Inc., and Ikon Office Solutions, Inc. (collectively "Ikon") on its claim for breach of contract.[1]

We affirm.

### STATEMENT OF THE ISSUES

Master Copy presents several issues for our review, which we consolidate and restate as:

 1. Whether the trial court erred when it permitted Ikon to present evi-

---

1. In its Statement of the Issues, Master Copy also challenges the trial court's judgment in favor of Ikon on Ikon's counterclaim for breach of contract. *See* Brief of Appellant at 1. However, Master Copy fails to develop a cogent and independent argument on this issue and never challenges the trial court's conclusion that it "breached the Lease by failing to make the required monthly lease payments to Ikon." Record at 194. Accordingly, this claim of error is waived. *See Flynn v. State,* 702 N.E.2d 741, 744 (Ind.Ct.App.1998) (citing former Indiana Appellate Rule 8.3(A)(7), now Indiana Appellate Rule 46(A)(8)(a)), *trans. denied.*

dence that a typewritten provision in the contract between the parties was in fact a unilateral alteration and never part of the original agreement.

2. Whether the trial court's judgment in favor of Ikon on its claim for breach of contract is clearly erroneous.

## FACTS AND PROCEDURAL HISTORY

In June 1994, Ikon entered into a contract with Master Copy for the lease of a copy machine. The pre-printed form contract consisted of multiple parts: a Rental Agreement obligating Master Copy to make monthly lease payments of $1,260; Equipment and Maintenance Agreements requiring Master Copy to pay various labor, parts, and service fees; and a Total Lifetime Coverage ("TLC") Agreement. The TLC Agreement sets forth Ikon's performance guarantees in part as follows:

[Ikon] guarantees lifetime satisfaction with your equipment, our service, and our employees[.]

* If equipment does not perform to your satisfaction, we will replace it with a unit of equal or greater capability.

* You may elect to return your equipment for a full purchase price refund.[ ]

[Ikon] will repair your copier on the first call[.]

* We will credit 25% of your minimum monthly service charge if we return twice for the same problem in 30 days.

[Ikon] will respond to your ... emergency service calls in zero to three business hours.

* We will credit 25% of your minimum monthly service charge if our average response time exceeds three business hours.

Record at 214. The TLC Agreement was given to all Ikon customers, whether they were leasing or purchasing a copy machine from Ikon. Ikon retained the originals of the Rental Agreement and the Equipment and Maintenance Agreements. Denny McPherson, the president of Master Copy, retained the original of the TLC Agreement.

By December 1994, six months after execution of the contract, Master Copy had defaulted on its monthly lease payments to Ikon. Master Copy's delinquencies persisted throughout 1995 and into the Fall of 1996, at which time it owed Ikon more than $7,000.00 in monthly lease payments. Ikon refused to service the copy machine on several occasions as a result of Master Copy's delinquent account. In September 1996, Ikon provided Master Copy with formal notice of default and advised Master Copy of its intention to repossess the copy machine.

On November 21, 1996, Master Copy informed Ikon that the copy machine did not work properly and demanded a refund of the monthly lease payments it had made to date. When Ikon offered to provide Master Copy with a different copy machine, Master Copy declined, claiming it was inadequate. Unbeknownst to Ikon, Master Copy had ceased doing business for several months. Ikon ultimately repossessed the copy machine from Master Copy on February 3, 1997.

On April 10, 1997, Master Copy filed a complaint for damages against Ikon alleging breach of contract and seeking a refund of the monthly lease payments it had previously paid. Attached to the complaint was a copy of the contract Master Copy alleged Ikon had breached. The copy of the TLC Agreement contained the

identical lifetime satisfaction guarantee set forth above, with the following addition:

If equipment does not perform to your satisfaction, ... [y]ou may elect to return your equipment for a full purchase price refund. *And or full refund on all rental payments.*

Record at 214. The additional lease refund provision, "And or full refund on all rental payments," was the only provision not preprinted on the original form contract. It was typewritten on the TLC Agreement and accompanied by what Master Copy purported to be the initials of McPherson and Nathan Dumond, the Ikon sales representative who negotiated the lease.

In its answer to Master Copy's complaint, Ikon denied "that the agreement attached to the Complaint ... is a true and complete copy of the lease agreement between the [parties]." Record at 48. Ikon also brought a counterclaim against Master Copy alleging breach of contract for Master Copy's delinquent and outstanding monthly lease payments. Ikon sought damages in the amount of the remaining monthly lease payments due on the contract.

Master Copy subsequently filed a motion for summary judgment, which the trial court denied. Following a bench trial, the trial court entered judgment in favor of Ikon on Master Copy's claim for breach of contract and on Ikon's counterclaim. Pursuant to Ikon's request, the trial court issued special findings of fact that the TLC Agreement "was altered without Ikon's knowledge or consent" and that "the initials of Nathan Dumond were ... a forgery." Record at 192; *see* Ind. Trial Rule 52(A). The trial court concluded that:

34. [T]he Altered TLC Agreement, which contains the language: *"And or full refund of all rental payments[ ]"* was not part of the agreement reached

between Master[ ]Copy and Ikon. Therefore, Master[ ]Copy failed to prove that its agreement with Ikon allowed Master[ ]Copy to obtain a refund of its lease payments if the Copier did not operate in a satisfactory manner during the Lease.

35. The TLC Agreement, which the Court finds was the actual agreement between Master[ ]Copy and Ikon, does not provide that Master[ ]Copy can obtain a refund of lease payments if the Copier did not operate in a satisfactory manner. Instead, the TLC Agreement only provides that Master[ ]Copy can cancel the Lease if the Copier does not operate in a satisfactory manner, which would relieve Master[ ]Copy of its obligation to make future lease payments to Ikon.

Record at 193–94. This appeal ensued.

### DISCUSSION AND DECISION

### Issue One: Admission of Evidence of Unilateral Alteration

Master Copy first contends that the trial court erred when it permitted Ikon to present evidence that the typewritten lease refund provision in the TLC Agreement was a unilateral alteration and never part of the original agreement. Specifically, Master Copy argues that, because Ikon did not deny execution of the contract under oath in a responsive pleading or by affidavit filed therewith pursuant to Indiana Trial Rule 9.2, the validity of the lease refund provision was established such that Master Copy was automatically entitled to a refund of its monthly lease payments. Accordingly, Master Copy maintains that the trial court "abused its discretion by considering, as an issue, Ikon's challenge [to the execution of the contract.]" Brief of Appellant at 15.

Indiana Trial Rule 9.2 governs the pleading and proof of written instruments. It provides in relevant part:

(A) **When instrument or copy must be filed.** When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading. Such instrument, whether copied in the pleadings or not, shall be taken as part of the record.

(B) **Proof of execution of instruments filed with pleadings.** *When a pleading is founded on a written instrument and the instrument or a copy thereof is included in or filed with the pleading, execution of such instrument, indorsement, or assignment shall be deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an affidavit filed therewith....*

(C) **Oath or affidavit of denial of execution must be made upon personal knowledge.** An oath or affidavit denying execution as required and made under subdivision (B) of this rule shall be made upon the personal knowledge of the person making it, and, if general in form (Rule 11(B)), shall be deemed to be made upon such personal knowledge.

(D) **Burden of proving execution.** The ultimate burden of proving the execution of a written instrument is upon the party claiming its validity, but execution is presumed. "Presumed" means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

* * *

(F) **Effect of non-compliance— Amendments.** Non-compliance with the provisions of this rule requiring a written instrument to be included with the pleading may be raised by the first responsive pleading or prior motion of a party. The court, in its sound discretion, may order compliance, the reasons for non-compliance to be added to the pleadings, or allow the action to continue without further pleading. Amendments to correct the omission of a required written instrument, an assignment or indorsement thereof, or the omission of a denial of the execution of a written instrument as permitted or required by this rule shall be governed by Rule 15, except as provided by subdivision (A) of this rule.

* * *

(H) **"Execution" of a written instrument.** "Execution" of a written instrument includes the following requirements:

(1) That a signature was made with express, implied or apparent authority and was not forged;

* * *

(3) That the written terms of the instrument have not been materially altered without the express, implied or apparent authority of the person bound thereon[.]

Ind. Trial Rule 9.2(A)–(H) (emphasis added).

Trial Rule 9.2(B) permits the execution of written instruments, which are the foundation of a pleading but which may be used as evidence in the pleader's case, to be established and challenged at the pleading stage of a lawsuit. Civil Code Study Commission Comment, 1A W. Harvey, INDIANA PRACTICE at 193 (1999). Under Trial Rule 9.2(B), there should be no

need for the pleader claiming rights upon an instrument to formally offer the instrument into evidence unless its execution is denied. *Id.* The rule does not conclusively establish the genuineness of a signature. *See Moehlenkamp v. Shatz*, 396 N.E.2d 433, 438 (Ind.Ct.App.1979). Rather, the purpose of the provision is to eliminate the technicalities of formally introducing into evidence matters that are not disputed by either party. Historical Discussion, 1A W. Harvey, INDIANA PRACTICE at 210 (1999). However, if execution of an instrument *is* denied under oath in a responsive pleading or by an affidavit filed therewith, the pleader must offer the instrument into evidence, but only after evidence is introduced reasonably establishing the lack of execution. Civil Code Study Commission Comment, 1A W. Harvey, INDIANA PRACTICE at 193 (1999). While execution of a written instrument is presumed, the ultimate burden of proving execution is upon the party claiming its validity. Ind. Trial Rule 9.2(D).

 Here, because Master Copy's pleading is founded on a written instrument, Master Copy complied with Trial Rule 9.2(A) by filing a copy of the parties' contract, including the altered TLC Agreement, with its complaint. *See Mechanics Laundry & Supply, Inc. v. Wilder Oil Co., Inc.*, 596 N.E.2d 248, 253 (Ind.Ct.App. 1992), *trans. denied.* Having done so, the altered TLC Agreement became a part of the record, and execution of the parties' contract, including the typewritten lease refund provision, was deemed established pursuant to Trial Rule 9.2(B). *See id.* Unless Ikon denied execution of the altered TLC Agreement under oath in a responsive pleading or by affidavit filed therewith, the altered agreement was deemed admitted into evidence without proving its execution. *See id.* Pursuant to Trial Rule 9.2(D), the trial court "must

have presumed execution unless and until [Ikon] introduced evidence supporting a finding otherwise." *See id.* Our review of the record demonstrates that Ikon presented ample evidence to support the trial court's finding that the typewritten lease refund provision in the altered TLC Agreement was in fact a unilateral alteration.

Dumond testified at trial that he personally observed McPherson sign the TLC Agreement and that at the time McPherson signed the agreement, the typewritten lease refund provision was not present. Dumond also testified that the initials "ND" accompanying the lease refund provision were a forgery, because he always initialed documents with an "NED." Record at 344. He further explained that he never would have advised McPherson that Master Copy was entitled to a full refund of its monthly lease payments or initialed a provision to that effect, because only Ikon's president had the authority to sign off on any changes to the company's standard lease agreements. Dumond stated that he was not aware that the TLC Agreement had been altered until November 1996.

 Although Ikon presented sufficient evidence in this case to rebut the presumption that the altered TLC Agreement had been executed, we note that Ikon did not follow the pleading procedures set forth in Trial Rule 9.2(B). Its unverified answer to Master Copy's complaint, its responses to Master Copy's requests for admissions, and its affidavit in opposition to Master Copy's motion for summary judgment did not constitute a denial of execution within the meaning of Trial Rule 9.2(B). *See, e.g., Mechanics Laundry*, 596 N.E.2d at 253 (concluding that motion to transfer for improper venue and responses to requests for admissions were insuffi-

cient to constitute adequate denial of execution).

■■■ Nevertheless, Ikon's failure to comply with the procedures under Trial Rule 9.2(B) did not preclude the trial court from allowing Ikon to present evidence at trial that the altered TLC Agreement was a unilateral alteration. To the contrary, absent a denial of execution under oath as described in Trial Rule 9.2(B), execution of the altered TLC Agreement was simply presumed, and the agreement was deemed admitted into evidence without proof of execution by Master Copy. This presumption could still be refuted by the evidence Ikon presented at trial. Indeed, the trial court weighed the evidence submitted by both parties concerning the validity of the altered TLC Agreement, viewed the TLC Agreement with and without the typewritten lease refund provision, and determined that the provision had been unilaterally inserted and accompanied by forged initials. On appeal, we may not draw our own conclusions from documents whose authenticity is disputed, as that is within the province of the trial court. *Uland v. National City Bank of Evansville*, 447 N.E.2d 1124, 1129 (Ind.Ct.App.1983) (upholding trial court's finding that signature on written instrument was genuine). Accordingly, the trial court did not err when it permitted Ikon to present evidence that the typewritten lease refund provision in the contract between the parties was in fact a unilateral alteration and never part of the original agreement.

### Issue Two: Judgment

Master Copy next alleges that the trial court's judgment in favor of Ikon on its claim for breach of contract is clearly erroneous. Master Copy contends that the TLC Agreement's language, "You may elect to return your equipment *for a full purchase price refund*," is ambiguous and should be construed against Ikon because it drafted the contract between the parties. Record at 214 (emphasis added). In particular, Master Copy claims it is entitled to a refund of its monthly lease payments *irrespective* of the typewritten lease refund provision the trial court concluded was a unilateral alteration.

■ Our review of the record reveals that Master Copy raises this theory of recovery for the first time on appeal. From the outset, Master Copy's sole basis for recovery has been the typewritten provision, "And or full refund of all rental payments." Record at 214. In its complaint for damages, Master Copy alleged that "Plaintiff elected to return the machine to defendants for a full refund [of rental payments] as stated in the agreement." Record at 10. In its motion for summary judgment, Master Copy argued that it was entitled to a full refund of its lease payments pursuant to "a special clause typed in to include full refund of all rental payments." Record at 103. Much of the evidence presented at trial concerned the validity of the typewritten lease refund provision in the original TLC Agreement. Ikon even noted at trial that "[t]he only dispute is whether or not [the] typewritten insertion was a forgery." Record at 397.

Indeed, Master Copy's position on appeal, namely, that the phrase "for a full purchase price refund" is ambiguous and should be construed as applying to refunds of monthly lease payments as well, is contrary to the evidence it presented at trial. McPherson testified that he believed the phrase "for a full purchase price refund" to mean a refund for purchased equipment, not equipment that was being leased. He explained that he was not satisfied with the original TLC Agreement's use of the term "purchase" because he was leasing the copy machine from Ikon. McPherson

testified that he consequently requested that Dumond add the typewritten lease refund provision as follows:

> ... I told [Dumond] if you are going to give me a money back guarantee I will absolutely go with your equipment, but I've got one problem[.] [Y]our TLC [Agreement] keeps calling this a purchase. [Dumond] explained to me, ... at any time if your [sic] unhappy, we will stop the lease and we will give you a full refund [of your monthly lease payments].... I said I don't like the language[.] I would like for that to be changed.... [Dumond] told me if that will make me happy he will get it changed. He left my office with the original TLC, he made the correction, he changed the language to coincide with the fact that I was renting or leasing the equipment, ... I was happy with it, we both initialed the change, [and] I signed the documents[.]

Record at 447. Moreover, Master Copy's trial brief takes the position that "the additional language was added prior to [Master Copy's] signing of the contract and that without the additional language [it] would never have signed the contract." Record at 172. The trial court specifically found, "Master[ ]Copy claims that under the *Altered* TLC Agreement, [it] was entitled to a full refund of its lease payments because the Copier did not work to [its] satisfaction." Record at 192 (emphasis added).

■ It is well settled that a party may not advance a theory on appeal that was not originally raised at the trial court. *Van Meter v. Zimmer*, 697 N.E.2d 1281, 1283 (Ind.Ct.App.1998). An appellant who has presented its case to the trial court on a certain and definite theory shall not be permitted to change on appeal and prevail upon another theory not previously advanced. *Thompson v. Public Serv. Co. of Ind., Inc.*, 499 N.E.2d 788, 791 (Ind.Ct.

App.1986), *trans. denied.* Accordingly, Master Copy's claim of error on this issue is waived.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

