**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CHRISTOPHER L. CASSIDY**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**BRIAN M. HOUSE**
Norris Choplin Schroeder, LLP
Indianapolis, Indiana

FILED
Apr 18 2012, 9:34 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

HUNTINGTON COPPER, LLC,          )
                                 )
    Appellant-Defendant,         )
                                 )
      vs.                      )     No. 09A02-1110-PL-917
                                 )
CONNER SAWMILL, INC.,            )
                                 )
    Appellee-Plaintiff.          )
                                 )

INTERLOCUTORY APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-1107-PL-13

April 18, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Huntington Copper, LLC, appeals the trial court's denial of its motion to dismiss for lack of personal jurisdiction. Huntington Copper contends that the forum-selection clause contained in the contract at issue is valid and enforceable, and that the proper venue for any litigation is the Common Pleas Court of Hamilton County in Cincinnati, Ohio. Finding that the forum-selection clause is valid and enforceable, we reverse the trial court's denial of Huntington Copper's motion to dismiss.

## Facts and Procedural History

Conner Sawmill, Inc., is an Indiana corporation that has been in operation for thirteen years. It is run by Tim and Beverly Middlekauf, both of whom have Bachelor's degrees in Business from Indiana University. Huntington Copper, LLC, is a North Carolina Limited Liability Company that provides business-consulting services. Its principal place of business is in Greensboro, North Carolina, but it has several regional offices, including one in Mason, Ohio.

A representative from Huntington Copper contacted Conner Sawmill to set up a meeting between the two companies so that Huntington Copper could present the services that it could offer to Conner Sawmill. Conner Sawmill checked the Better Business Bureau website to investigate Huntington Copper. The meeting between the two businesses took place on December 21, 2010, and lasted for three hours. They discussed a potential agreement for Huntington Copper to provide business-consulting services, and on that same day, a formal Consulting Services Agreement was negotiated and entered into by both parties. The contract was two pages long and included a forum-selection

clause, indicating that "in the event of litigation, exclusive jurisdiction shall vest in the Common Pleas Court of Hamilton County, Cincinnati, Ohio; Ohio law applying." Appellant's App. p. 22.

On December 27, 2010, a representative of Huntington Copper traveled to Indiana and began providing services to Conner Sawmill. This arrangement continued until approximately February 3, 2011, and Conner Sawmill made payments of approximately $20,000 to Huntington Copper during that time. On February 1, 2011, Bev Middlekauff wrote a letter to Huntington Copper, praising the work of their representative, noting that he had "taken a very disorganized, untimely and inaccurate set of books and has put systems in place to offer meaningful data and financial tools that can be used daily to guide our business." *Id.* at 23.

However, Conner Sawmill later became dissatisfied with Huntington Copper's work and discontinued payment. Conner Sawmill filed suit in Cass Superior Court, Cass County, Indiana, seeking to rescind the contract and order the return of all money paid to Huntington Copper. Huntington Copper filed a 12(b)(2) motion to dismiss based on lack of personal jurisdiction due to the forum-selection clause. The trial court held a hearing on the matter and issued a order denying the motion to dismiss. *Id.* at 15.

This interlocutory appeal now ensues.

**Discussion and Decision**

Huntington Copper contends that the trial court erred in denying its motion to dismiss for lack of personal jurisdiction and allowing Conner Sawmill's suit to continue in Indiana despite the forum-selection clause indicating exclusive jurisdiction in the

3

Common Pleas Court of Hamilton County in Cincinnati, Ohio, because: (1) there was mutual assent with respect to the contract at issue in this case and (2) the forum-selection clause itself was valid and enforceable.

Conner Sawmill argues that the proper remedy in this case is the rescission of the contract. Therefore, its argument continues, the forum-selection clause does not apply because there will be no contract. Appellee's Br. p. 9. However, a contract is not rescinded until it is addressed by a trial court and declared as such. *Van Bibber Homes Sales v. Marlow*, 778 N.E.2d 852 (Ind. Ct. App. 2002), *trans. denied*. Therefore, the forum-selection clause is still valid because it will determine which trial court will hear the rescission issue. As a result, we are not persuaded by Conner Sawmill's argument and turn to the arguments surrounding the denial of Huntington Copper's motion to dismiss for lack of personal jurisdiction.

Personal jurisdiction is a question of law. *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1102 (Ind. Ct. App. 2003), *trans. denied*. When reviewing a motion to dismiss for lack of personal jurisdiction under Indiana Trial Rule 12(b)(2), we apply a de novo standard of review. *Id.* at 1101-02.

### I. Mutual Assent

Huntington Copper contends that there was a meeting of the minds between it and Conner Sawmill with respect to key contractual terms, rendering the contract as a whole, including its forum-selection clause, enforceable.

The law concerning contracts is well settled in Indiana. An offer, acceptance, plus consideration make up the basis for a contract. *Homer v. Burman*, 743 N.E.2d 1144,

1146-47 (Ind. Ct. App. 2001), *reh'g denied.* "'A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract.'" *Id.* (quoting *Pinnacle Computer Servs., Inc. v. Ameritech Pub.*, 642 N.E.2d 1011, 1013 (Ind. Ct. App. 1994), *reh'g denied*). However, "[a]ssent to those terms of a contract may be expressed by acts which manifest acceptance." *Id.*

In this case, Conner Sawmill was on notice of the clause and manifested assent to it when it signed the contract. The clause was in plain language in the middle of the second page of a two-page contract. The terms were straight forward and capable of understanding; Conner Sawmill could have easily rejected the terms of the clause had it objected. Failing to read the entire contract absent an excuse such as fraud or misrepresentation will not relieve a party of the terms of the contract. *See Moore v. Bowyer*, 180 Ind. App. 429, 431, 388 N.E.2d 611, 612 (1979). "Under Indiana law, a person is presumed to understand and assent to the terms of the contract he signs." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003).

Further, Conner Sawmill and Huntington Copper indicated their intent to be bound by the terms of the contract by their performance. Huntington Copper provided consulting services to Conner Sawmill, and in return, Conner Sawmill paid Huntington Copper approximately $20,000. Appellant's App. p. 76. This clearly manifested acceptance of the terms of the contract, indicating the mutual assent necessary for contract formation.

We therefore find that there was mutual assent, rendering the contract as a whole, including its forum-selection clause, enforceable.

## II. Valid and Enforceable Forum-Selection Clause

Huntington Copper also contends that the forum-selection clause itself is valid and enforceable. Contractual provisions, even those occurring in form contracts, that seek to limit the litigation of future actions to particular courts are enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party would be deprived of a day in court. *Mechs. Laundry & Supply, Inc. v. Wilder Oil Co.*, 596 N.E.2d 248, 252 (Ind. Ct. App. 1992), *reh'g denied*, *trans. denied*. Additionally, the provision must have been freely negotiated. *Dexter Axle Co. v. Baan USA, Inc*., 833 N.E.2d 43, 48 (Ind. Ct. App. 2005). Thus, it is well settled that to determine the validity of a forum-selection clause, we are to examine whether the clause is freely negotiated and just and reasonable under the circumstances.

### A. Freely Negotiated

Huntington Copper first contends that the forum-selection clause was freely negotiated. Indiana courts recognize that parties are free to enter into contracts and presume that contracts represent the freely bargained agreement of the parties. *Grott*, 794 N.E.2d at 1102. In determining whether a forum-selection clause was freely negotiated, we apply a fact sensitive test comparing the bargaining positions of the parties in privity of the contract. *Dexter*, 833 N.E.2d at 49. This inquiry is akin to whether a contract is unconscionable due to a disparity in bargaining power. *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind. Ct. App. 1995), *reh'g denied*, *trans. denied*. A contract is unconscionable

"if there exists a great disparity between the parties which leads the weaker party to sign the contract unwillingly or without awareness of its terms." *Id.*

In this case, Huntington Copper and Conner Sawmill were both sophisticated commercial actors who had substantially similar bargaining positions during negotiations. Huntington Copper is a company that provides business-consulting services with its principal place of business in North Carolina and several other regional offices. Appellant's App. p. 44. Conner Sawmill is a company that has been in operation for thirteen years and is run by Bev and Tim Middlekauf, both of whom received Bachelor's Degrees in Business from Indiana University. *Id.* at 71-72. Both parties clearly possess a high degree of business acumen.

The bargaining process between the two parties also appears to have been fair. Huntington Copper contacted Conner Sawmill and set up an appointment to make a presentation about the services that it could offer. *Id.* at 73. Conner Sawmill consulted the Better Business Bureau website to check on Huntington Copper and listened to a three-hour presentation, and it was not until after all of this that a contract was signed. The contract was two pages, with the forum-selection clause included in a paragraph on the second page. While the forum-selection clause was not explicitly discussed before the parties signed the contract, *id.* at 75, Conner Sawmill had the opportunity to read the contract before signing. The clause was not buried in pages of text, and the parties had equal bargaining positions, so if Conner Sawmill had objected to that clause, the issue could have been discussed before signing.

We therefore find that the parties were able to freely negotiate the forum-selection clause.

*B. Just and Reasonable*

Generally no public policy reasons exist to prevent parties from establishing venue through a contractual provision. *Mechs. Laundry*, 596 N.E.2d at 252. This is because forum-selection clauses typically serve as a worthy tool to limit the fora in which a company may be sued, to dispel any confusion about where suits arising from the contract must be brought, and to pass on economic benefits to consumers in the form of reduced prices reflecting the savings that a company enjoys by limiting the fora in which it may be sued. *Id*. at 251. Nevertheless, a forum-selection clause's validity may come into question when it "interfere[s] with the orderly allocation of judicial business . . . ." *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990).

However, we find that this forum-selection clause did not interfere with the orderly allocation of judicial business. On the contrary, it dispels any confusion as to where disputes arising from this contract shall be litigated, conserving judicial resources that may otherwise be dedicated to deciding this issue.

Additionally, Ohio is not an inconvenient or unreasonable forum; it is our neighboring state and the home state of one of Huntington Copper's regional offices. The distance that Conner Sawmill would have to travel in order to be present in court is not so great as to deprive them of a meaningful opportunity to litigate its claim. Further, we have held that "[a] claim that unnecessary travel expense will result from trial in the contractual forum is far from sufficient, by itself, for this court to conclude that an

8

otherwise reasonable and freely negotiated contractual provision is unenforceable." *Grott*, 794 N.E.2d at 1104. So while Ohio cannot be said to be a remote or inconvenient forum, any travel that Conner Sawmill would be required to undergo as a result of the forum-selection clause would not necessarily render the clause unenforceable.

Finally, there is no evidence of fraud or overreaching. The forum-selection clause was in plain language in the middle of the second page of a two-page contract. The language was clear, with the clause providing: "it is specifically agreed that, in the event of litigation, exclusive jurisdiction shall vest in the Common Pleas Court of Hamilton County, Cincinnati, Ohio; Ohio law applying." Appellant's App. p. 22. The contract itself was not lengthy or convoluted; it was clearly written and easily accessible to the reader. *See id.* at 21-22. There was nothing fraudulent or overreaching about the forum-selection clause, so we find that the forum-selection clause was just and reasonable.

We therefore hold that the trial court erred in denying Huntington Copper's motion to dismiss, as the forum-selection clause was valid and enforceable; any litigation should have taken place in the Common Pleas Court of Hamilton County in Cincinnati, Ohio, preventing the Cass Superior Court from having personal jurisdiction in this matter.

Reversed.

CRONE, J., and BRADFORD, J., concur.