Tracy PROWS and Kolob Computer dba
Computerland of Ogden, Plaintiffs,

v.

PINPOINT RETAIL SYSTEMS, INC., a
corporation, and Flying J, Inc., a corpo-
ration, Defendants and Petitioner,

v.

The Honorable Timothy R.
HANSON, Respondent.

No. 920573.

Supreme Court of Utah.

Dec. 23, 1993.

Rehearing Denied Feb. 14, 1994.

Edward M. Garrett, Salt Lake City, for
plaintiffs.

John Knapp Baird, Mark J. Morrise, Char-
lotte K. Wightman, Salt Lake City, for peti-
tioner.

HOWE, Associate Chief Justice:

Defendant Pinpoint Retail Systems, Inc.,
appeals from the district court's denial of its
motion to dismiss for lack of venue. Utah
R.Civ.P. 12(b)(3). We granted this appeal
from an interlocutory order under Utah Rule
of Appellate Procedure 5.

Plaintiff Tracy Prows is principal owner
and president of Kolob Computer Corpora-
tion, doing business as Computerland of Og-
den.[1] Flying J is a Utah corporation in the
business of oil refining and operating truck
stops, restaurants, motels, and convenience
stores. In early 1987, Flying J expressed to
Prows dissatisfaction with its point-of-sale
computers. These devices were used at Fly-
ing J truck stops to compute sales of fuel,
food, and other items and to compile account-
ing data. Flying J requested Prows' assis-
tance in developing a new point-of-sale com-
puter.

1. Because the two plaintiffs in this action are so
closely related, we will refer to them collectively
as "Prows."

Prows contacted Pinpoint Retail Systems, Inc., a Canadian corporation he had come in contact with at a trade show in Las Vegas. Pinpoint markets and sells its computer products throughout the United States, but its principal place of business is in Ontario, Canada. Throughout 1987 and part of 1988, Prows met with personnel at Flying J and Pinpoint to develop a computer that would meet Flying J's specific needs. He worked without compensation on the project but had agreed with Pinpoint to act as its value added reseller. This meant that Pinpoint would provide the newly developed computers at wholesale price to Prows, who would in turn sell them to Flying J at Pinpoint's recommended retail price. This agreement ensured Prows a reasonable profit for his services. On July 14, 1988, Prows entered into Pinpoint's standard "Value Added Reseller Agreement" (the "VAR" agreement).

After the new point-of-sale computers were developed, Prows and Pinpoint submitted a proposal to Flying J, which agreed to the purchase price and committed to buy a substantial number of the computers. However, prior to entering into a final contract, Richard Peterson of Flying J went to Pinpoint's manufacturing plant to ensure that Pinpoint had the capability of manufacturing the new computers and software. After he returned to Utah, Peterson contacted Prows and told him that "his presence in this purchase and sale agreement would no longer be necessary" because Flying J had decided to buy the computers directly from Pinpoint. Some time later, Flying J purchased at least 200 new point-of-sale computers.

On April 16, 1992, Prows commenced this suit against Pinpoint in third district court, alleging breach of contract and quantum meruit. Pinpoint moved to dismiss for improper venue. Utah R.Civ.P. 12(b)(3). The motion was based on section 13.8 of the VAR agreement, which reads:

13.8 *Forum and Venue*

This agreement shall be construed and interpreted in accordance with and gov-erned by the laws of the State of New York and the federal laws of the United States applicable therein. The VAR [Prows] consents and agrees that all legal proceedings relating to the subject matter of this Agreement shall be maintained in courts sitting in the Borough of Manhattan, in the City of New York, in the State of New York and the VAR [Prows] consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts.

Thereafter, Prows filed an amended complaint, adding Flying J as a defendant and alleging several business torts including interference with contract, interference with prospective economic relations, and conspiracy. The district court denied Pinpoint's motion to dismiss for improper venue, and we granted its subsequent petition for interlocutory appeal.[2]

In reviewing a motion to dismiss under rule 12(b)(3) of the Utah Rules of Civil Procedure, we view the facts and "construe the complaint in the light most favorable to the plaintiff and indulge all reasonable inferences in his favor." *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991) (ruling on rule 12(b)(6) motion to dismiss for failure to state a claim). The trial court's decision that venue is proper, despite a forum-selection clause to the contrary, will not be reversed absent an abuse of discretion. *Eads v. Woodmen of the World Life Ins.*, 785 P.2d 328, 330–31 (Okla.Ct.App. 1989); *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 451 (Minn.Ct.App. 1989) (holding that court abuses its discretion in enforcing forum-selection clause where clause is "so unreasonable that its enforcement would be ... against both logic and the facts on the record").

Before deciding the principal issue in this case, it is necessary to address two preliminary matters. First, the parties argue at length about whether New York courts would have subject matter jurisdiction over this case and personal jurisdiction over Pin-

---

**2.** Flying J also moved to dismiss for improper venue, but it argued that venue should be transferred from Salt Lake to Box Elder County. The court denied the motion, ruling that venue in Salt Lake County should not be disturbed. We denied Flying J's petition for a writ of mandamus and its untimely petition for intermediate appeal.

point. It is not necessary for us to decide this question. We will simply assume for purposes of this appeal that New York courts would have jurisdiction over the case and the parties.

Second, the parties agreed that their contract would be "interpreted in accordance with and governed by the laws of the State of New York." Pinpoint argues that under New York law, "prelitigation forum-selection clauses" must be enforced and that this rule does not "contravene any strong public policies of the State of Utah." In the absence of such a conflict, the argument continues, this court must apply New York law and enforce the forum-selection provision. We disagree.

■ The Second Restatement of Conflict of Laws provides:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless ...

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties [sic] choice....

Restatement (Second) Conflict of Laws § 187(2)(a) (Supp.1988). On its face, the rule appears to support Pinpoint's position. While New York has no "substantial relationship" to the parties or the transaction, there is a "reasonable basis" for Pinpoint's choosing New York law to govern the VAR agreement—Pinpoint wants to "limit the number of forums in which it may be required to bring or defend an action."

The existence of that "reasonable basis," however, is without effect. The comments to section 187 state that the rule of subsection

(2) "applies only when two or more states have an interest in the determination of the particular issue"; it does not apply "when all contacts are located in a single state and when, as a consequence, there is only one interested state." *Id.* at cmt. d. New York has no interest in the determination of this case. A Utah plaintiff brought this suit against a Utah defendant and a Canadian defendant. The VAR agreement was to be performed in Utah. It was signed in Utah, and the alleged breach and tortious conduct occurred here. All relevant "contacts" occurred in Utah, and as a consequence, Utah is the only state with an interest in the action.

For this reason, we are not bound by New York law in determining the validity of the choice-of-forum provision in section 13.8 of the VAR agreement. Rather, we decide the question under Utah law, which until this time has been virtually silent on the issue.[3]

Traditionally, courts held forum-selection clauses invalid on the ground that it violated public policy to "permit such clauses to 'oust' a court other than the chosen court of jurisdiction invested in it by law." Eugene F. Scoles & Peter Hay, *Conflict of Laws* 353 (1984); *see also* Francis M. Dougherty, Annotation, *Validity of Contractual Provision Limiting Place or Court In Which Action May Be Brought*, 31 A.L.R.4th 404, § 3 (1984). However, during the 1950s and 1960s, the ouster theory began to erode as courts sought to "effectuat[e] the intent of the parties on notions akin to the doctrine of forum non conveniens." Scoles & Hay at 353. Still, it was not until the Supreme Court's decision in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), that the "ouster theory" was permanently laid to rest.[4] In *Bremen*, the Supreme Court wrote:

**3.** Both parties cite *Petersen v. Ogden Union Railway & Depot*, 110 Utah 573, 175 P.2d 744, 747 (1946). In *Petersen*, an injured railway worker accepted an advance of $500 from his employer. In the receipt for the advance, the worker agreed to bring suit only in the federal district court of Utah, northern division. This court refused to enforce the forum-selection clause, stating, "Generally speaking, venue is a privilege which may be waived, but it may not be contracted away in the face of a specific statute which prohibits such

contracting, as does section 5 of the Employers' Liability Act under consideration." *Id.* 175 P.2d at 747. In the instant case, we must decide the validity of a forum-selection clause that does not conflict with a statutory provision. This is a question of first impression.

**4.** In *Bremen*, Unterweser, a German corporation, agreed by contract to tow Zapata's off-shore drilling rig from Louisiana to the Adriatic Sea. The contract contained a forum-selection clause

The argument that [forum-selection] clauses are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigal [sic] legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals.

*Id.* at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521. In short, the Court concluded, "No one seriously contends in this case that the forum-selection clause 'ousted' the District Court of jurisdiction." *Id.*

▬ The modern view adopted by a majority of courts and which we adopt today is set forth in section 80 of the Second Restatement of Conflict of Laws:

The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable.

Restatement (Second) of Conflict of Laws § 80 (Supp.1988). Under this section, a plaintiff who brings an action in violation of a choice-of-forum provision bears the burden of proving that enforcing the clause is unfair or unreasonable. *Id.* § 80 cmt. c.

To meet this burden, a plaintiff must demonstrate that the "chosen state would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust." [5] *Id.* On this point, the United States Supreme Court stated, "[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be [so] gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917, 32 L.Ed.2d at 525. While this is a heavy burden, it is not insurmountable. *See Validity of Contractual Provision Limiting Place or Court In Which Action May Be Brought,* 31 A.L.R.4th 404, § 4[c] (1984) (listing cases where courts found choice-of-forum provisions unreasonable). After careful consideration of the record, we conclude that Prows met this burden of proof.

Prows argues that if the forum-selection clause is enforced, he will be in the "position of trying the case in Utah against Flying J and in New York against Pinpoint." This result, according to Prows, would be "chaotic and prohibitively expensive." The trial court was appropriately troubled by the prospect of requiring Prows to litigate the same case in two different forums. It stated:

To require the plaintiff to go to New York to litigate where Flying J cannot be a part of a lawsuit, because clearly you can't get Flying J there unless there's personal jurisdiction on some basis we haven't talked about, then this entire issue can't be resolved in one case, we're going to have to try part of it here, part of it in New York, and that assuming the State of New York will take it.

---

providing that "any dispute arising must be treated before the London Court of Justice." *Bremen,* 407 U.S. at 2, 92 S.Ct. at 1909, 32 L.Ed.2d at 516. Four days after Unterweser's deep sea tug left Louisiana, a severe storm struck, damaging the rig. Zapata ignored the forum-selection clause and brought suit against Unterweser in the United States district court in Tampa, Florida, seeking damages for negligent towage and breach of contract. The district court refused to enforce the clause, and the court of appeals affirmed. The United States Supreme Court, however, reversed, holding that the district court should have given effect to the "legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." *Id.* at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521–22.

The Court has not limited the scope of *Bremen* to "freely negotiated international agreement[s],

unaffected by fraud, undue influence or overweening bargaining power." *Id.* at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 522. In *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Court upheld a forum-selection clause in a form ticket contract between a private individual and the cruise line corporation. That decision has been criticized. Edward A. Purcell, *Geography as a Litigation Weapon: Consumers, Forum–Selection Clauses, and the Rhenquist Court,* 40 UCLA L.Rev. 423 (1992).

5. A party might also show that (1) the choice-of-forum provision was "obtained by fraud, duress, the abuse of economic power, or other unconscionable means"; or (2) the courts of the chosen state "would be closed to the suit or would not handle it effectively or fairly." Restatement (Second) of Conflict of Laws § 80, cmt. c (Supp. 1988).

Requiring a bifurcated trial on the same issues contravenes the "objective of modern procedure," which is to "litigate all claims in one action if that is possible." *Dyersburg Machine Works, Inc. v. Rentenbach Eng'g Co.,* 650 S.W.2d 378, 380–81 (Tenn.1983) (court refused to enforce a forum selection clause because of the likelihood that the chosen forum had jurisdiction over only two of three defendants). It also increases the cost of litigation. Increased costs and policy considerations aside, however, requiring Prows to litigate against Pinpoint in New York and Flying J in Utah would twice impose on him the onerous burden of proving a "conspiracy" between two defendants, only one of whom is present at each trial. Forcing Prows to shoulder this heavy burden of proof, standing alone, is unjust and for all practical purposes denies him his day in court.

We therefore affirm the denial of Pinpoint's motion to dismiss for lack of venue. Schedule "C" of the VAR agreement grants Pinpoint the right to collect attorney fees "incurred ... in enforcing its rights under this Agreement." Pinpoint has no right under the VAR agreement to have this dispute litigated exclusively in New York; therefore, it is not entitled to attorney fees.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.