**FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN, Appellant–Plaintiff,**

v.

**Robert M. SLOMAN, Appellee–Defendant.**

No. 20A03–0609–CV–432.

Court of Appeals of Indiana.

Aug. 2, 2007.

Janet G. Horvath, John R. Obenchain, Jones Obenchain, LLP, South Bend, IN, Attorneys for Appellant.

Aric J. Rutkowski, Zappia, Zappia & Stipp, South Bend, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Farm Bureau General Insurance Company of Michigan ("Farm Bureau") sought this interlocutory appeal after the trial court denied its motion for summary judgment regarding whether Farm Bureau's forum selection clause negated Elkhart County, Indiana, as a proper venue for Robert M. Sloman's suit against Farm Bureau and whether Sloman failed to provide Farm Bureau with specific written notice of his uninsured motorist claim within the one-year contractual limitations period. Finding that Farm Bureau's forum selection clause, under the circumstances, is unjust and unreasonable and that a genuine issue of material fact exists as to whether Farm Bureau was provided with written notice of Sloman's uninsured motorist claim within one-year of the accident, as required by his policy, we affirm the judgment of the trial court.

### Facts and Procedural History

On the evening of August 24, 2003, Sloman and Janet S. Lund were involved in an automobile accident after Lund merged directly in front of Sloman while driving east in the right hand lane on County Road 6 in Elkhart, Indiana. At the time of the accident, Sloman was insured under a family auto insurance policy with Farm Bureau. Lund was uninsured at the time of the accident. Within two days after the accident, Sloman provided Farm Bureau with a Personal Auto Loss Report and a copy of the Indiana Officer's Standard Crash Report that indicated that Lund did not have automobile insurance. Sloman's Farm Bureau agent, Pete Fichtner, filled out the Personal Auto Loss Report and circled the word "None," emphasizing that Lund did not have insurance. Appellant's App. p. 109. Sloman purchased his policy from a Farm Bureau office located in Cass County, Michigan. Sloman's policy was governed by Michigan's No–Fault Act and contained uninsured motorist coverage. The no-fault portion of the policy entitled Sloman to receive payments from Farm Bureau for medical expenses and/or lost wages. The uninsured motorist coverage provided for payment of compensatory damages that an insured was legally entitled to recover from the owner or driver of an uninsured automobile.

On October 2, 2003, Sloman's attorney, Anthony Zappia ("Attorney Zappia"), noti-

fied Farm Bureau of his representation of Sloman. Moreover, on January 26, 2004, March 23, 2004, July 21, 2004, and August 20, 2004, Attorney Zappia sent letters to Farm Bureau regarding coverage under Michigan's No–Fault Act. The letters did not expressly refer to a potential claim under the uninsured motorist provision of Sloman's policy. On May 20, 2005, Sloman offered to settle his claim with Farm Bureau regarding his medical expenses, special damages, and loss of enjoyment of life sustained as a result of the accident. In response, Farm Bureau stated in a letter to Attorney Zappia that Sloman's recovery from Farm Bureau was limited under Michigan's No–Fault Act to expenses incurred and that it would not settle claims for special damages and loss of enjoyment of life under the uninsured motorist portion of the policy. That provision includes the following Contractual Limitations Clause:

3. Time Limitation for Action Against Us

Any person seeking Uninsured Motorist Coverage must:

a. present the claim for compensatory damages in compliance with the terms and conditions of this coverage and policy; and

b. present to us a written notice of the claim for Uninsured Motorist Coverage within one year after the **accident** occurs.

A **suit** against us for Uninsured Motorist Coverage may not be commenced later than one year after the **accident** that caused the injuries being claimed, unless there has been full compliance with all the conditions of this coverage and the policy.

*Id.* at 44. Farm Bureau denied Sloman's claim apparently because it believed that Sloman had failed to provide it with written notice of his uninsured motorist claim within one year of the accident in accordance with the Contractual Limitations Clause. After Farm Bureau denied his uninsured motorist claim, Sloman filed his initial Complaint For Damages ("Complaint") in Elkhart Superior Court No. 2 against Lund and Farm Bureau.[1]

Also contained within the uninsured motorist provision of Sloman's Farm Bureau policy is the following forum selection clause:

6. Location of Action Against Us

Any court action for any dispute regarding coverage under this Part, or any dispute regarding whether a person is entitled to recover compensatory damages, or as to the amount of those damages must take place in the venue of the county and state in which this policy was purchased.

*Id.* at 45. Based on this provision, Farm Bureau filed "Defendant Farm Bureau's Trial Rule 12(B)(6) Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment." *Id.* at 56. This motion first asserted that venue in Elkhart County, Indiana, was improper and that Cass County, Michigan, where Sloman purchased the policy, is the proper venue. Farm Bureau also asserted that it is entitled to summary judgment because Sloman failed to timely file a written notice of claim for uninsured motorist coverage within the prescribed one-year contractual limitations period. The trial court denied both parts of Farm Bureau's Motion in an Order stating "[p]arties appear for sum-

---

1. On July 25, 2005, Sloman filed his initial Complaint naming Lund and United Farm Family Mutual Insurance Company d/b/a Farm Bureau Insurance as defendants. On August 17, 2005, Sloman filed an Amended Complaint naming Lund and Farm Bureau General Insurance Company of Michigan as defendants.

mary judgment. Hearing held. The court finds that it is not well taken and motion for summary judgment is denied in both parts."[2] *Id.* at 9. Farm Bureau's interlocutory appeal ensued.

### Discussion and Decision

Farm Bureau raises two issues on appeal. First, Farm Bureau contends that the trial court erred in denying its motion for summary judgment and allowing Sloman's suit to continue against Farm Bureau in Indiana because the forum selection clause contained within Sloman's policy is just and reasonable and its terms were freely negotiated. Second, Farm Bureau contends that the trial court erred in denying its motion for summary judgment because Sloman is not entitled to uninsured motorist coverage because he failed to provide Farm Bureau with written notice of his claim for uninsured motorist coverage within the one-year time limit required under the terms of his policy.

When reviewing the correctness of a ruling on a motion for summary judgment, this Court applies the same standard as the trial court. *Atl. Coast Airlines v. Cook,* 857 N.E.2d 989, 994 (Ind.2006). A party seeking summary judgment must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Our review of a summary judgment motion is limited to the materials designated to the trial court. *Id.* We must construe the evidence in favor of the nonmoving party and resolve all doubts against the moving party. *Id.* The interpretation of an insurance policy is a question of law and, thus, appropriate for sum-

mary judgment. *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243 (Ind.2000).

Initially, we pause to note the unique challenge this case presents to this Court. Rather than focusing our analysis exclusively on the two parties in privity of contract (Sloman and Farm Bureau), we must additionally consider Lund, the uninsured motorist, and determine what effect a third party uninsured motorist has on our analysis. Thus, under the facts of this case, we must consider two unique components: (1) the potential liability and damages owed by Lund to Sloman and (2) Farm Bureau's liability to Sloman under his uninsured motorist provision. We specifically address these two components in our analysis of whether Farm Bureau's forum selection clause is just and reasonable.

### I. The Forum Selection Clause

Our analysis of this issue is guided by principles set forth by the United States Supreme Court in *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), and subsequent Indiana cases that have adopted and incorporated *Carnival's* reasoning with regard to the validity of forum selection clauses.

In *Carnival,* the Shutes bought tickets through a Washington travel agent for a cruise from Los Angeles, California, to Puerto Vallarta, Mexico. *Id.* at 588, 111 S.Ct. 1522. Each of the tickets sent to the Shutes contained a forum selection clause stating:

> 8. It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion

---

**2.** In its Order, the trial court did not address Farm Bureau's Trial Rule 12B(6) Motion to Dismiss.

of the Courts of any other state or country.

*Id.* While in international waters off the coast of Mexico, Ms. Shute was injured and subsequently filed a suit in a federal district court in Washington. *Id.* Carnival moved for summary judgment, arguing that the forum selection clause printed on its tickets required the Shutes to bring suit in a Florida court. *Id.* Carnival prevailed at the district court level, but the Ninth Circuit Court of Appeals reversed, holding that the clause should not be enforced because it "was not freely bargained for." *Id.* at 589, 111 S.Ct. 1522. The Supreme Court reversed the Ninth Circuit and validated Carnival's use of the forum selection clause for several reasons, including:

> (1) to limit the fora in which a cruise line potentially could be subject to suit;
> (2) to dispel any confusion about where suits arising from the contract must be brought and defended, sparing parties the time and expense of pretrial motions to determine the correct forum, thereby conserving judicial resources otherwise devoted to deciding those motions; and,
> (3) to pass on benefits to the passengers in the form of reduced fares reflecting the savings that a cruise line would enjoy by limiting the fora in which it may be sued.

*Mechanics Laundry v. Wilder Oil Co.*, 596 N.E.2d 248, 251 (Ind.Ct.App.1992), *reh'g denied.*

■ Because *Carnival* involved a case in admiralty and, thus, federal law governed the enforceability of the forum selection clause, the Supreme Court's holding is not binding on Indiana state courts. Nonetheless, Indiana has adopted the Supreme Court's reasoning from *Carnival* as it relates to the validity of forum selection clauses. Contractual provisions, even those occurring in form contracts, that

seek to limit the litigation of future actions to particular courts are enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party would be deprived of a day in court. *Id.* at 252. Additionally, the provision must have been freely negotiated. *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind.Ct.App.2005). Thus, it is well settled that to determine the validity of a forum selection clause, we are to examine whether the clause is freely negotiated and just and reasonable under the circumstances.

## A. Freely Negotiated

■ Farm Bureau first argues that the forum selection clause was freely negotiated. Farm Bureau considers the clause freely negotiated because Sloman was not an "unwilling party to the contract or was not unaware of the terms, including the forum-selection clause contained therein." Appellant's Br. p. 20. We must agree.

■ In determining whether a forum selection clause was freely negotiated, we apply a fact sensitive test comparing the bargaining positions of the parties in privity of the contract. *Dexter*, 833 N.E.2d at 49. This inquiry is akin to whether a contract is unconscionable due to a disparity in bargaining power. *Horner v. Tilton*, 650 N.E.2d 759, 763 (Ind.Ct.App.1995), *reh'g denied.* A contract is unconscionable "if there exists a great disparity between the parties which leads the weaker party to sign the contract unwillingly or without awareness of its terms." *Id.*

Insurance policies rarely epitomize an equal bargaining relationship between the contracted parties. *Bosecker*, 724 N.E.2d at 244. However, Farm Bureau's superior bargaining position, by itself, does not render the policy unconscionable. Nowhere

in the record can we find any indication that Sloman unwillingly signed the Farm Bureau policy or that he was unaware of its terms. Although a disparity in bargaining power exists between Sloman and Farm Bureau, this is not enough to render the forum selection clause unconscionable. *See Horner,* 650 N.E.2d at 763.

Nonetheless, we cannot ignore that Sloman's Farm Bureau contract is a prototypical insurance form contract. In *Bosecker,* Justice Boehm noted the typical bargaining relationship between an insured and insurer as follows:

> Insurance policies are prepared in advance by insurance and legal experts, having in view primarily the safeguarding of the interests of the insurer against every possible contingency. The insurer not only fully knows the contents of the writing, but also adequately comprehends its legal effect. The insured has no voice in fixing or framing the terms of [the] policy, but must accept it as prepared and tendered, usually without any knowledge of its contents, and often without ability to comprehend the legal significance of its provisions.

724 N.E.2d at 244 (quoting *Glens Falls Ins. Co. v. Michael,* 167 Ind. 659, 677, 74 N.E. 964, 969 (1905)). Thus, while we find Farm Bureau's policy to be freely negotiated, we certainly recognize the one-sided nature of such policies. With that in mind, we next turn to whether the forum selection clause is just and reasonable.

## B. Just and Reasonable

 Farm Bureau argues that the forum selection clause is just and reasonable for three reasons. First, the forum selection clause was not hidden or inconspicuous. Second, Sloman did not object to the clause or seek to have it omitted from the policy. Third, if Sloman was unhappy with the terms of his policy, he "was free to take his business elsewhere." Appellant's Br. p. 20. Under the circumstances of this case, we cannot agree that Farm Bureau's forum selection clause is just and reasonable.

 Usually, no public policy reasons exist to prevent parties from establishing venue through a contractual provision. *Mechanics Laundry,* 596 N.E.2d at 252. This is because forum selection clauses typically serve as a worthy tool to limit the fora in which a company may be sued, to dispel any confusion about where suits arising from the contract must be brought, and to pass on economic benefits to consumers in the form of reduced prices reflecting the savings that a company enjoys by limiting the fora in which it may be sued. *Id.* at 251. Nevertheless, a forum selection clause's validity may come into question when it "interfere[s] with the orderly allocation of judicial business. . . ." *Nw. Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 375 (7th Cir.1990).

To understand the effect of this action on the judicial system, it is preliminarily necessary to understand the case within a case aspect of this action against Farm Bureau. The first aspect of this case involves Farm Bureau's contractual liability to Sloman under the terms of the uninsured motorist provision. If Farm Bureau is contractually liable, then the second aspect of the case involves the extent of the liability. Ultimately, Farm Bureau is liable to Sloman only if (1) the accident was the fault of Lund and (2) Sloman suffered damages as a result thereof. Consequently, any action against Farm Bureau on the contract is inseparably tied to the legal liability of Lund, and Sloman's action against Lund is but the first link in an unbroken chain leading to the contractual liability of Farm Bureau. *See Vernon Fire & Cas. Ins. Co. v. Matney,* 170 Ind.App. 45, 351 N.E.2d 60, 64 (1976).

Both parts of the lawsuit against Farm Bureau must be resolved in Michigan according to the terms of the uninsured motorist provision of Sloman's Farm Bureau policy. The forum selection clause requires:

Any court action for any dispute regarding coverage under this Part, **or any dispute regarding whether a person is entitled to recover compensatory damages, or as to the amount of those damages must take place in the venue of the county and state in which this policy was purchased.**

Appellant's App. p. 133 (emphasis added). Thus, as to Farm Bureau, the Michigan courts—the state where the policy was purchased—must determine Farm Bureau's obligation to Sloman. This necessarily involves, assuming the contractual liability of Farm Bureau, a determination of Lund's liability to Sloman and the extent of Sloman's damages. Herein lies the dilemma. The forum selection clause cannot bind Lund who was not a party to this contract between Farm Bureau and Sloman. In fact, Michigan would have no jurisdiction over Lund for an accident that occurred in Indiana. Hence, implementation of Farm Bureau's forum selection clause would result in Sloman having to file two separate yet similar lawsuits emanating from the same accident: one in Indiana against Lund regarding liability and damages, and one in Michigan against Farm Bureau regarding its obligation to pay damages to Sloman under its uninsured motorist provision. We, therefore, must decide whether implementation of a forum selection clause that would result in two separate yet similar lawsuits is just and reasonable. We begin our analysis by assessing the policy considerations identified in *Carnival.*

### 1. Limiting the Fora

The first consideration supporting the enforcement of Carnival's forum selection clause is that its implementation would "limit the fora in which a cruise line potentially could be subject to suit." *Mechanics Laundry,* 596 N.E.2d at 251. No such justification exists in this case. Implementing Farm Bureau's forum selection clause would not result in a limitation of the fora in which it potentially could be subject to suit because even if Sloman were required to file suit against Farm Bureau in Michigan, any suit maintained against Lund must be filed in Indiana (the place where the accident occurred and Lund resides). Because Farm Bureau maintains a vital financial interest in any uninsured motorist suit filed by Sloman, it would be required to intervene in the Indiana lawsuit against Lund or risk being bound by the trial court's judgment. *See Stewart v. Walker,* 597 N.E.2d 368, 371 (Ind.Ct.App.1992) ("If, having received notice, the insurance carrier desires to raise the defenses available to the uninsured motorist, the carrier must intervene in the plaintiff's action against the motorist. Failure to do so will bind the insurer to a judgment against the motorist."), *reh'g denied.* Therefore, while implementation of the clause would certainly guarantee that at least one lawsuit is brought in Michigan, Farm Bureau would have no way of knowing or predicting where an uninsured motorist suit might be brought or where and when it would have to intervene.

### 2. Conserving Judicial Resources

The second factor supporting enforcement of Carnival's forum selection is that doing so would "dispel any confusion about where suits arising from the contract must be brought and defended, sparing parties the time and expense of pretrial motions to determine the correct forum, thereby conserving judicial resources otherwise devot-

ed to deciding those motions." *Mechanics Laundry*, 596 N.E.2d at 251. Again, no such justification exists in this case. Rather than dispelling any confusion and conserving judicial resources, Farm Bureau's forum selection clause leads to greater confusion and expenditure of greater judicial resources. The language of the clause requires liability and damage disputes as well as contractual disputes against Farm Bureau to be tried in Michigan. Yet here, the same liability and damage issues will be decided in the Indiana suit against Lund. If we assume that Farm Bureau intervenes in the Indiana suit to protect its rights, then the issue of liability and damages may be decided in only the Indiana courts. But, that assumes that the Indiana suit will be tried first. If the Michigan suit is tried first, then Lund will not be bound by the Michigan judgment as the Michigan courts will have no jurisdiction over her. Therefore, it may be necessary to try this aspect of the suit in both the Michigan and Indiana courts. The result would be added expenses and inconvenience to the parties and the witnesses, an increased burden on the judicial system, and the possibility of inconsistent verdicts. Thus, confusion and the expenditure of unnecessary judicial resources would result.

### 3. Economic Benefits Passed on to Consumer

The third consideration supporting the enforcement of Carnival's forum selection clause is that such enforcement would result in Carnival being able "to pass on benefits to the passengers in the form of reduced fares reflecting the savings that a cruise line would enjoy by limiting the fora in which it may be sued." *Id.* Here, no such economic benefit can be found, because as we have already stated, rather than limiting the potential fora available for suit, thereby reducing costs, this forum selection clause increases the cost for both parties and fails to provide Farm Bureau with any certainty as to where a lawsuit may arise. Thus, the combination of greater costs and the lack of predictability of future litigation would likely lead to higher rather than lower premiums passed on to the consumers. This would result in an economic detriment to consumers, not a benefit.

### 4. Problems Attendant with Multiple Litigation of Similar Suits

Our analysis thus far has placed great weight on trial convenience, expediting claims, and avoiding multiple lawsuits. Although concerns with trial convenience and expedition of claims are issues addressed in *Carnival* and other Indiana cases involving forum selection clauses, the threat of multiple lawsuits is an issue we have never before considered in the context of a forum selection clause, nor was it an issue that was prevalent in *Carnival. See Dexter*, 833 N.E.2d at 43; *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098 (Ind.Ct.App.2003), *trans. denied; Horner*, 650 N.E.2d at 759; *Mechanics Laundry*, 596 N.E.2d at 248; *Tandy Computer Leasing v. Milam*, 555 N.E.2d 174 (Ind.Ct.App. 1990). We find this issue to be of paramount concern because any lawsuit involving an insurance policy that contains both a forum selection clause restricting suit to a particular venue and uninsured motorist coverage will likely lead to multiple lawsuits involving the same parties and the same issues of liability.

Generally speaking, multiple litigation involving similar suits is not favored. *See Indiana Ins. Co. v. Noble*, 148 Ind.App. 297, 323, 265 N.E.2d 419, 435 (1970). In fact, the intent behind many of our Rules of Trial Procedure is the avoidance of multiple lawsuits. *See, e.g., Ratcliff v. Citizens Bank of Western Ind.*, 768 N.E.2d 964, 967 (Ind.Ct.App.2002) ("The phrase

'transaction or occurrence' should be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events."); *Russell v. Bowman, Heintz, Boscia & Vician, P.C.*, 744 N.E.2d 467, 471 (Ind.Ct.App. 2001) ("The purpose of T.R. 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits."); *Allstate Indem. Co. v. Brown*, 696 N.E.2d 92, 96 (Ind.Ct.App.1998) (stating, with regard to an insurer's right to intervene found within T.R. 24, "the interests in judicial economy and the avoidance of multiple lawsuits require the insurer to litigate those issues of which it has received adequate notice when those issues are before the court."). It is thus evident that trial convenience, expediting claims, and avoidance of multiple lawsuits have always been of significant concern in the development of our legal principles. While no Indiana court has specifically addressed the implementation of a forum selection clause that would result in multiple lawsuits, two courts from other jurisdictions have.

The Utah Supreme Court has held that it would be unreasonable to enforce a forum selection clause in a contract between a Utah plaintiff and a Canadian defendant, where the clause required litigation in New York, even though New York had no connection to the lawsuit, and where enforcement would require the plaintiff to maintain his action against the Canadian defendant in New York while also having to litigate the same case against a Utah defendant in Utah. *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 812 (Utah 1994). In *Prows*, the Court was particu-

larly troubled "by the prospect of requiring Prows to litigate the same case in two different forums." *Id.* The Court stated that "[r]equiring a bifurcated trial on the same issues contravenes the objective of modern procedure, which is to litigate all claims in one action if that is possible." *Id.* "It also increases the cost of litigation." *Id.*

Sloman finds himself in a similar position as the plaintiff in *Prows*.[3] Sloman and Lund reside in two different states—Sloman in Michigan and Lund in Indiana—and enforcement of the clause would require Sloman to maintain his action against Lund in Indiana while also having to litigate the same case against Farm Bureau in Michigan. The Minnesota Court of Appeals has stated, "The enforcement of a forum-selection clause creates a serious inconvenience if it would result in two lawsuits involving similar claims or issues being tried in separate courts." *Alpha Sys. Integration, Inc., v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 909 (Minn.Ct.App.2002), *rev. denied.*

In sum, there are three primary reasons why we consider Farm Bureau's forum selection unjust and unreasonable. First, none of the policy reasons supporting the enforcement of Carnival's forum selection clause are present here. Second, avoidance of multiple lawsuits involving the same parties and the same issues has historically been of great concern in Indiana. Third, we find persuasive the analysis from other jurisdictions that have considered this precise issue. We therefore find venue proper in Elkhart County, Indiana, and affirm the trial court's order denying

**3.** We acknowledge that the facts from *Prows* are distinguishable from the facts of this case because in *Prows* New York had no connection to the lawsuit, whereas here Michigan has a connection to the lawsuit because Sloman purchased his policy in Cass County,

Michigan. We nonetheless find this distinction slight and of no significance because the main thrust behind the decision in *Prows* is that modern procedure supports litigation of all claims in one action if possible.

Farm Bureau's motion for summary judgment regarding venue.[4]

## II. Written Notice of Sloman's Uninsured Motorist Claim

■ Farm Bureau also contends that the trial court erred in denying its motion for summary judgment because Sloman failed to provide written notice of his claim for uninsured motorist benefits within the one-year time limit required under the terms of his policy.

■ Sloman's Farm Bureau policy contains a contractual term requiring any person seeking uninsured motorist coverage to provide Farm Bureau with "written notice of the claim for Uninsured Motorist Coverage within one year after the **accident** occurs." Appellant's App. p. 44. Typically, contractual terms limiting the time to file a claim or requiring notice to be given within a specific period of time are valid.

> "It is well-established in Indiana that, while not favored, ... contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." The "purpose of such provisions concerns not a specific date following the loss but unreasonable delay in proceeding to enforce or pursue the claim." That is, these limitations protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates.

*Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 380 (Ind.Ct.App.2004) (quoting *Summers v. Auto–Owners Ins. Co.*, 719 N.E.2d 412, 414–15 (Ind.Ct.App.1999)). A notice requirement is "material and of the essence of the contract." *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind.1984). The requirement of prompt notice provides the insurer with the opportunity to initiate a timely and adequate investigation of all the circumstances surrounding the accident or loss. *Id.*

Farm Bureau argues that Sloman did not provide it with written notice of his uninsured motorist claim within the one-year time limit specified in his policy because its awareness that Lund was an uninsured motorist and its dealings with Sloman's attorney "[do] not inescapably lead to the conclusion that Farm Bureau was aware that a claim for uninsured motorist benefits was being made." Appellant's Br. p. 13. However, the record reflects that on October 2, 2003, Attorney Zappia provided Farm Bureau with written notice of his representation of Sloman in a letter stating, "I will be representing Mr. Robert Sloman as a result of the automobile accident of August 24, 2003." Appellant's App. p. 81. In addition to the October correspondence, four other letters were sent to Farm Bureau within one year after the accident regarding Sloman's Michigan no-fault benefits. Moreover, Sloman provided Farm Bureau with a Personal Auto Loss Report in which the word "none" was circled to emphasize that Lund did not have insurance coverage and provided Farm Bureau with a copy of the Indiana Officer's Standard Crash Report that also indicated that Lund was an uninsured motorist. A genuine issue of material

---

4. In its appellate brief, Farm Bureau heavily relies on *Grott v. Jim Barna Log Systems–Midwest, Inc.*, 794 N.E.2d 1098 (Ind.Ct.App. 2003), *trans. denied,* to support its argument that the forum selection clause is just and reasonable under the circumstances and free-

ly negotiated. However, in *Grott,* the likelihood of two lawsuits commencing in two states to adjudicate the same underlying claim was neither a consideration nor a possibility. That fact sufficiently distinguishes *Grott* from this case.

fact sufficient to preclude summary judgment exists where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App. 2000). We conclude that there is a genuine issue of material fact as to whether the letters of correspondence, in conjunction with the two reports tendered to Farm Bureau, were sufficient written notice under the terms of the policy. This issue, though, is more appropriately left to the fact finder, not us.[5] We therefore affirm the trial court's denial of Farm Bureau's motion for summary judgment.

Affirmed.

BAILEY, J., and BARNES, J., concur.

**5.** In his brief, Sloman equates the contractually required notice within his Farm Bureau policy with the statutory notice requirements of the Indiana Tort Claims Act ("ITCA"). In this vein, he argues that he substantially complied with Farm Bureau's notice requirement regarding an uninsured motorist claim. We do not address this argument because we decline to equate the statutory requirements of the ITCA to that of a contractual term within an insurance policy.