In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3157

KNAUF INSULATION, INC.,

*Plaintiff-Appellee,*

*v.*

SOUTHERN BRANDS, INC., and ALBERT and ROSEMARY DOWD,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00273-SEB-TAB — **Sarah Evans Barker**, *Judge.*

ARGUED APRIL 14, 2016 — DECIDED MAY 3, 2016

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* Knauf Insulation, Inc. (formerly named Knauf Insulation, GmbH), is the Delaware subsidiary of a German corporation. Its principal place of business is in Indiana, where it manufactures fiberglass insulation for sale to, among other types of customer, distributors of insulation, such as SBI, as the parties refer to defendant Southern Brands, Inc. (SBI is, or was, a broker as well as a distributor, because Knauf often delivered the insulation it sold SBI di-

rectly to the installers of the insulation, SBI's customers. But the parties call SBI a distributor and we'll stick with that term.) The other defendants, the Dowds, a married couple, are SBI's principals.

For many years SBI was delinquent in paying Knauf for the insulation it bought. By 2012, when Knauf filed this suit against both SBI and the Dowds (who in 2003 had signed a personal guaranty of their company's debt to Knauf), SBI owed Knauf more than $3.5 million. Originally filed in an Indiana state court, the suit was removed to federal district court, the parties being of diverse citizenship. Indiana law is agreed to govern the issues presented by the suit. The district judge granted summary judgment in favor of Knauf, and her final judgment awarded it the money owed by SBI plus interest on that debt.

The defendants—SBI and the Dowds—have appealed on multiple grounds. Two pertain to the Dowds' guaranty, executed in 2003, of SBI's debts to Knauf. The disputed provisions of the guaranty state that "the undersigned hereby unconditionally guarantees the full and prompt payment when due, whether by acceleration or otherwise, and at all times thereafter, of all obligations of the DEBTOR [i.e., SBI] to the CREDITOR, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or now or hereafter existing, or due or to become due," and "any action to enforce this guaranty may be brought in, and the undersigned hereby consents and submits to the jurisdiction of, the courts of the State of Indiana."

The district court ruled that the Dowds' guaranty made them personally liable for all of SBI's debts to Knauf. The Dowds disagree, arguing that when they signed the guaran-

ty they didn't "intend or contemplate being sued by Knauf in Indiana on its much larger claims against SBI, arising more than four years later," and that despite the forum-selection clause "SBI, an out-of-state distributor doing business in the southeast, did not have such minimum contacts with Indiana as would subject it to Indiana's jurisdiction."

These arguments have no merit. The guaranty is explicit that it covers future as well as current obligations, for remember that it embraces "all obligations of the DEBTOR to the CREDITOR, howsoever created, … whether … now or hereafter existing, or due or to become due." Under Indiana law "a continuing guaranty encompasses all transactions, including those arising in the future, that are within the contemplation of the agreement," *S-Mart, Inc. v. Sweetwater Coffee Co.*, 744 N.E.2d 580, 587 (Ind. App. 2001)—and the Dowds' guaranty expressly contemplated liability for future obligations of unknown magnitude.

As for SBI's contacts with Indiana, it didn't have to have *any* contacts with that state in order to bind itself by a forum-selection clause, which typically requires one of the parties to the clause to litigate in a jurisdiction with which it has sparse if any contacts, as otherwise there would be no need for the clause. See *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Anyway SBI *did* have significant contacts with Indiana, by virtue of its dealings with Knauf over many years. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

The Dowds further argue that the "disparity in bargaining power" between Knauf and SBI left them with no choice but to sign the guaranty, and so was neither "freely negotiated" nor "just and reasonable," as Indiana law requires fo-

rum-selection clauses to be for them to be enforceable. See, e.g., *Farm Bureau General Ins. Co. of Michigan v. Sloman*, 871 N.E.2d 324, 329–33 (Ind. App. 2007). But the claim of "disparity in bargaining power" rests only on the fact that Knauf is a much larger company than SBI and apparently no one besides Knauf would take on SBI as a distributor on terms SBI could afford, making it dependent on Knauf and therefore compelled to do its bidding. But the size disparity between the two firms did not render the guaranties unconscionable or unenforceable. See *id*. at 329–30. On the contrary, the fact that SBI was not a dependable customer was a compelling reason for Knauf to insist that SBI's debts to it be secured by a guaranty. And as long as Knauf has competitors, which it does, it cannot merely by reason of its size coerce distributors and contractors to pay an exorbitant price for its insulation, unless insulation is in short supply or Knauf and its competitors are colluding in violation of the Sherman Act to lift the price of insulation above the competitive price—which in fact is charged, but unavailingly, as we're about to see.

A class action called *Columbus Drywall & Insulation, Inc. v. Masco Corp.* filed in 2004 charged Knauf and other manufacturers of fiberglass insulation with having conspired since 1999 with Masco Corporation, the largest insulation contractor and distributor in the United States, to sell residential fiberglass insulation to other contractors at prices significantly higher than those offered to Masco, thus violating the Sherman Act, 15 U.S.C. § 1, by forcing those contractors to overpay for insulation. See *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 549 (N.D. Ga. 2007).

SBI was originally a member of the proposed class ("proposed" because it was never certified), but in January 2006 the district judge presiding in *Columbus Drywall* granted the motion of the named plaintiffs to amend their complaint to drop from the class all but insulation contractors. SBI, being a distributor and not a contractor, was therefore out. Two years later the district court approved a settlement in *Columbus Drywall* that resulted in Knauf's being dismissed from the case. Five years after that SBI filed a counterclaim in the present case that accused Knauf of having been guilty of the price fixing of which it had been accused in *Columbus Drywall*—which if true would of course have harmed SBI, as Knauf supplied SBI with the insulation that SBI resold to its customers. The settlement in *Columbus Drywall* had made no finding of guilt on the part of any of the defendants, including Knauf, but neither had it exonerated the defendants; it was, after all, just a settlement, not an adjudication.

But 2013 was too late for SBI's counterclaim. The statute of limitations governing Sherman Act claims is only four years, 15 U.S.C. § 15b, though of course it's tolled (postponed—stops running) once a suit is brought within the limitations period. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554–60 (1974); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 561–62 (7th Cir. 2011). *Columbus Drywall* was such a suit. But the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, *supra*, implies that when SBI was dropped from the class in 2006 because it was not a contractor, there was no longer any basis for tolling the limitations period for its claim against Knauf, and so the time within which SBI could sue Knauf for violating the Sherman Act continued ticking. Not until 2013 seven years after SBI had been dropped from the class, did SBI file its

counterclaim against Knauf in the present case—the procedural vehicle for its Sherman Act claim.

We could stop here if *American Pipe* stood for the proposition that the tolling of a limitations period can never resume after a claimant is dropped from a class action. But it does not stand for that proposition, as we can explain by comparing two types of limitations period that are similar but not identical—statutes of limitations and statutes of repose—even though there is no statute of repose applicable to this case. Statutes of limitations run from the injury or other wrong giving rise to a suit; statutes of repose run from the action or transaction that gave rise to the injury. See *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182–83 (2014). Thus a statute of repose might require a suit for a construction injury to be brought within ten years after the construction was complete, even though the injury had arisen in the tenth year and suit had been brought the following year. Applied to this case, statute of repose analysis might lead to a conclusion that the four-year Sherman Act statute of limitations began to run not when SBI was injured by Knauf's violating the Sherman Act but earlier, when Knauf first agreed with its competitors to charge supracompetitive prices.

Statutes of limitations are routinely subject to "equitable tolling," meaning that a plaintiff can sue after the expiration of the limitations period (that is what "tolling" a statute of limitation means) if it had a good reason for its delay in suing and has suffered a harm greater than the defendant suffered or is likely to suffer as a result of being sued after the limitations period expired.

There is as we said no statute of repose in this case. Our use of the term "statute of repose analysis" is merely intend-

ed to flag the issue of whether a limitations period that begins to run (or, as in this case, to re-run) not when an injury is inflicted but when some transaction or other event occurs—which is this case, because the statute of limitations applicable to SBI's antitrust counterclaim resumed running when SBI was dropped from the class—can ever be subject to equitable tolling. As a result of recent Supreme Court decisions, we now know that the answer is that it can be. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016), explains that under the test for equitable tolling articulated in *Holland v. Florida*, 560 U.S. 631, 649 (2010), "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Thus if elements (1) and (2) are established, a litigant *is* entitled to equitable tolling including equitable class-action tolling—we know this because *Menominee* was a case, like this case and earlier the *American Pipe* case, in which the plaintiff was seeking to toll a statute of limitations that had ceased to be tolled when the plaintiff had fallen out of the class. See 136 S. Ct. at 754–55. In other words, given strong equities, a statute of limitations can be tolled even if the tolling of the plaintiff's claim had been interrupted when he ceased to be a member of the class.

To permit equitable tolling in such a case, provided there is a justification created by an extraordinary event, makes sense. Suppose the Dowds had been in a serious accident the day before SBI was dropped from the class, and as a result they had lapsed into comas, where they remained, unconscious, for a year. Provided that delaying suit by a year would not have imposed a serious hardship on Knauf, the

counterplaintiffs (the Dowds and SBI) would have had a colorable argument for equitable tolling. And likewise in *In re Copper Antitrust Litigation*, 436 F.3d 782, 788 (7th Cir. 2006), although "the plaintiffs could benefit from tolling under *American Pipe* … for the federal antitrust class action," that wasn't enough to make their claim timely. The court nevertheless remanded because there was a possibility that equitable estoppel (a doctrine akin to equitable tolling) could justify the plaintiffs' delay in suing. *Id.* at 790–91; cf. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).

Our court used to think that statutes of repose, and by extension statutes of limitations that begin to run or re-run independently of whether there is an injury, as in class-action cases such as the present, could not be tolled. We said in *Beard v. J.I. Case Co.*, 823 F.2d 1095, 1097 n. 1 (7th Cir. 1987), that "a period of limitation bars an action if the plaintiff does not file suit within a set period of time from the date on which the cause of action accrued. In contrast, a period of repose bars a suit a fixed number of years after an action by the defendant (such as manufacturing a product), even if this period ends before the plaintiff suffers any injury." Or as we said in *Klein v. DePuy, Inc.*, 506 F.3d 553, 557 (7th Cir. 2007), "a statute of repose … serves as an unyielding and absolute barrier to a cause of action, regardless of whether that cause has accrued." See also *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930–31 (7th Cir. 2011). But these rulings have been superseded by the Supreme Court's decision in *Menominee*.

SBI does not invoke equitable tolling by name, but it argues in a similar vein that through no fault of its own it was in the dark—had no idea that it had been expelled from the class and that the statute of limitations applicable to its anti-

trust claim had therefore resumed running. We are not per-suaded. The *Columbus Drywall* suit had been filed in Geor-gia, SBI's home, nine years before SBI filed its counterclaim. SBI couldn't have failed to notice the class action suit, in its own state, against Knauf, its principal supplier and creditor, or the settlement of the suit in 2008, which contained no finding that Knauf had committed an antitrust violation. More importantly SBI *should* have known of the suit, and that is what matters—recall the emphasis on diligence in the *Holland* case. SBI couldn't just sit on its fanny for nine years, making no inquiry into the status of the *Columbus Drywall* litigation, and insist that its indolence tolled the statute of limitations.

Courts "have allowed equitable tolling … where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late fil-ings where the claimant failed to exercise due diligence in preserving his legal rights. … [T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Depart-ment of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omit-ted). SBI failed to exercise minimal diligence, by either not learning of, or losing track of, the class action and as a result not realizing that it had been removed from the class and that upon that removal the statute of limitations governing its antitrust claim against Knauf had resumed running.

SBI's remaining arguments can be dispatched summarily. One is that SBI hadn't agreed with Knauf that all the debts listed in a February 1, 2012, account statement ("an agree-ment between the parties that all items of an account and

balance are correct, together with a promise, express or implied, to pay the balance," *Jackson v. Trancik*, 953 N.E.2d 1087, 1091 (Ind. App. 2011)) were correct, or that SBI was actually required to pay them. Knauf had been sending SBI invoices and monthly statements for years, and far from there being any evidence that SBI ever protested we have Mr. Dowd's acknowledgment that "Knauf chose to sue rather than continue the negotiation efforts, where … I would have disputed the amount." Apart from a single charge of $4,372.41 in January 2012, all of the charges on the final account statement were months or even years old. The defendants did not object to the charges until after this lawsuit was filed. "[F]ailing to object to liability on an account until a suit is filed constitutes failure to object to the account within a reasonable time and supports the inference of an agreement that the account balance is correct." *Auffenberg v. Board of Trustees of Columbus Regional Hospital*, 646 N.E.2d 328, 331 (Ind. App. 1995).

The defendants' final argument is that Knauf has failed to explain whether it credited some $1.3 million that SBI paid it between October 2008 and January 2012 against SBI's debts to it. But SBI would surely have noticed had the account statements that it admits having received from Knauf during this period failed to reflect a $1.3 million credit; nor did SBI plead the $1.3 million or any part of it as a setoff to Knauf's claim or present any evidence that it had paid that amount, beyond a declaration by Mr. Dowd that it "*may* be that Knauf has not credited these $1.3 million in payments," (emphasis added), which is pure speculation.

And so the judgment of the district court is

AFFIRMED.