

FILED

Aug 13 2024, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-PL-40

## Perdue Farms, Inc.,
*Appellant,*

–v–

## L&B Transport, LLC; U.S. Security Associates, Inc.; William Richardson; Jennifer Freeman; Brian Hill; Carl Nelson; and ABC Corporation,
*Appellees.*

---

Argued: April 4, 2024 | Decided: August 13, 2024

Appeal from the Daviess Circuit Court
No. 14C01-2008-PL-491
The Honorable Gregory A. Smith, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-PL-2989

---

**Opinion by Justice Slaughter**

Justices Massa, Goff, and Molter concur.
Chief Justice Rush concurs with separate opinion.

**Slaughter, Justice.**

Indiana courts generally hold contracting parties to their bargain, and that is especially true of commercial parties. The issue here is whether to enforce a forum-selection clause requiring an Indiana dispute between commercial parties to be heard in federal court in Maryland. The trial court said yes; a divided appellate court said no. We granted transfer and now affirm the trial court in part and reverse in part.

First, we enforce the forum-selection clause over the plaintiff's objection, though that means some of its claims will be heard in Maryland, and others (against non-contracting defendants) will be heard in Indiana. In doing so, we reject the plaintiff's strategic pleading to avoid the forum-selection clause by suing the contracting defendant's Indiana-based employees individually. Second, we decline to apply the forum-selection clause to the plaintiff's claims against the individual employees. These employees (unlike their employer) are not parties to the forum-selection clause, and they are not in privity with their employer.

I

A

Perdue Farms owns and operates a poultry-processing plant in Washington, Indiana. In August 2018, the plant had an unexpected, after-hours delivery of a hazardous material, aluminum chloride, from L&B Transport. When L&B's driver, William Richardson, checked in at the plant's gate, he incorrectly told the three security guards on duty he was delivering bleach. The guards—Jennifer Freeman, Brian Hill, and Carl Nelson—were not Perdue employees but worked for Perdue's security-service contractor, U.S. Security Associates. The guards did not check the bill of lading. Had they done so, they would have learned Richardson's true cargo was not bleach but aluminum chloride.

The guards pointed Richardson to the bleach tank to unload his shipment. After hooking his truck up to the tank, Richardson began pumping in the truck's contents. Like a chemistry experiment gone bad, the aluminum chloride mixed with the tank's existing bleach and started a chemical reaction. Fog and foam erupted from the tank into the plant,

filling multiple rooms and damaging equipment. Perdue had to shut down its plant for "multiple days" to clean the plant and salvage its equipment.

B

In August 2020, Perdue sued in the Daviess Circuit Court seeking more than $1.2 million in damages, including costs of repairing or replacing damaged equipment and lost profits due to the plant's closure. Perdue named two categories of defendants relevant here: those who delivered the aluminum chloride (L&B Transport and its driver), and those responsible for plant security (U.S. Security and its three employees on guard that day). Perdue also sued ABC Corporation, but its involvement in this case is unclear, and it is not participating in this appeal.

Only Perdue's claims against U.S. Security and the three employees are at issue on appeal; its claims against L&B and Richardson remain in the trial court. Perdue claims U.S. Security and its employees were negligent. Perdue seeks relief against the employees individually and against their employer both directly and under principles of respondeat superior. U.S. Security admitted its employees were acting within the scope of their employment but denied they were negligent. Perdue also raised a breach-of-contract claim against U.S. Security; yet it raised no such claim against the employees because they are not signatories to the security-service contract. The contract itself says the guards are "employees of, and responsible solely to, [U.S. Security]."

Relevant here, the contract between Perdue and U.S. Security includes a forum-selection clause that designates the federal district court in Maryland as the proper venue for disputes arising between them. The clause says:

> This Agreement shall be governed by, and construed in accordance with, the laws of the State of Maryland. Any lawsuit filed by either party arising from or related to this Agreement shall be brought in the United States District Court for the District of Maryland. The parties hereby consent to the jurisdiction of said court.

Despite this provision, the parties do not dispute that Indiana law governs whether their forum-selection clause is enforceable in Indiana.

Relying on the forum-selection clause, U.S. Security and its employees—all represented by the same counsel—moved to dismiss Perdue's lawsuit under Trial Rule 12(B)(3) for improper venue. Perdue opposed the motion, arguing the forum-selection clause is unenforceable because it violates Indiana public policy. It also argued the employees cannot invoke the clause because they are not parties to the contract. The trial court granted the motion to dismiss. It found the forum-selection clause "valid and enforceable", and that Perdue's claims against U.S. Security and its employees "are governed by the forum selection clause." Perdue sought permission to appeal the decision under Appellate Rule 14(B), which the trial court granted.

The court of appeals accepted jurisdiction over the appeal and reversed. *Perdue Farms, Inc. v. L&B Transp., LLC*, 217 N.E.3d 1267, 1274 (Ind. Ct. App. 2023). In a precedential opinion, a divided panel held the forum-selection clause unenforceable. *Ibid.* The majority reasoned that enforcing the clause would be unjust and unreasonable because Perdue sued "multiple parties—some of whom are subject to the forum selection clause and others who are not". *Ibid.* Thus, the court held, enforcement "would result in multiple lawsuits involving the same facts and evidence in multiple locations." *Ibid.* Having found the clause unenforceable, the panel did not decide whether the clause applied to Perdue's claims against the employees. *Id.* at 1274 n.6.

Judge Crone dissented. He said that "Perdue has no valid basis for crying foul" since it is a "sophisticated corporate entit[y]" that "should have to live with the contractual bargain that it freely struck with U.S. Security". *Id.* at 1274–75 (internal quotation marks omitted). In his view, the fact that Perdue may have to litigate its claims in two states—Indiana and Maryland—should not excuse Perdue from its bargained-for agreement. *Id.* at 1275. The majority's analysis, he reasoned, means "a party could avoid a forum selection clause that it freely agreed to simply by adding additional local parties as defendants." *Ibid.*

U.S. Security and its employees then sought transfer, which we granted, 230 N.E.3d 885 (Ind. 2024), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

## II

We seldom relieve contracting parties from their agreed forum. Commercial parties seeking such relief face an especially onerous burden. They must show the chosen forum will be so burdensome as to deprive them of their day in court. We hold that Perdue has not met this burden. Thus, the forum-selection clause is enforceable here. Perdue must litigate its claims against U.S. Security in the Maryland federal court.

At the same time, non-parties to a contract generally are not subject to its terms—neither its benefits nor its burdens. That means the forum-selection clause typically would not apply to Perdue's claims against U.S. Security's three employees—Freeman, Hill, and Nelson—on duty when L&B Transport delivered the aluminum chloride to Perdue's plant. Yet this case presents an unusual wrinkle. Perdue's negligence claims against the employees arise from their duties under the security-service contract. U.S. Security and Perdue may have intended the forum-selection clause to govern such suits against employees. After all, the parties' agreement—including its forum-selection clause—applies to all disputes "arising from or related to" their agreement. But U.S. Security and the employees fail to present our Court with a viable argument for applying the forum-selection clause to the non-party employees. We decline to overlook their waiver of this issue.

## A

"Parties to a contract are generally free to bargain for the terms that will govern their relationship", such as "where any disputes will be resolved." *O'Bryant v. Adams*, 123 N.E.3d 689, 692–93 (Ind. 2019). Indiana "puts a premium on" such accords because we presume they "represent the parties' freely bargained agreements." *Id.* at 694. A party trying to avoid a forum-selection clause faces a steep climb—one that is "especially onerous" for commercial parties. *Ibid.* So long as the forum-selection clause is "freely negotiated" and "reasonable and just", we enforce it. *Ibid.*

(quoting *Carmeuse Lime & Stone v. Illini State Trucking, Inc.*, 986 N.E.2d 271, 276, 277 (Ind. Ct. App. 2013)). Perdue concedes it freely negotiated the forum-selection clause with U.S. Security. The only issue before us, then, is whether enforcing the clause is unreasonable or unjust.

To avoid the forum-selection clause, Perdue must show that enforcing the clause will be "so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Horner v. Tilton*, 650 N.E.2d 759, 763–64 (Ind. Ct. App. 1995) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). We hold that Perdue has not made this showing for three reasons.

1

First, Perdue is incorporated in Maryland, maintains its headquarters there, and is registered to do business here in Indiana, where it owns and operates a major poultry-processing plant. Given Perdue's considerable presence in both states, enforcing the parties' choice of a Maryland forum while some claims remain in Indiana will not burden Perdue enough to warrant ignoring the clause.

In weighing such burdens, the United States Supreme Court is unsympathetic to commercial parties seeking relief from their agreements. Take the *M/S Bremen* case from 1972. There, the parties chose London as their agreed forum, even though one party was based in the United States and the other in Germany. *M/S Bremen*, 407 U.S. at 17. Though London was a foreign site for both parties, the Court refused to intervene given the "expanding horizons of American contractors" and their right to bargain freely. *Id.* at 11–12. "The barrier of distance that once tended to confine a business concern to a modest territory no longer does so." *Id.* at 8. The Court's observation then is no less true today, fifty years later.

2

Second, Indiana public policy does not forbid enforcing the forum-selection clause even though it would spawn multiple lawsuits. To support its public-policy argument, Perdue cites an opinion from our intermediate appellate court holding that a forum-selection clause was unenforceable, in part because it would "lead to multiple lawsuits

involving the same parties and the same issues of liability." *Farm Bureau Gen. Ins. Co. of Mich. v. Sloman*, 871 N.E.2d 324, 332 (Ind. Ct. App. 2007), trans. denied.

To this argument we say, first, that *Farm Bureau* is not our case, and we are not bound by it. But even were we to accept *Farm Bureau*'s premise, Perdue reads this case too broadly. *Farm Bureau* involved an individual plaintiff suing a commercial defendant. *Id.* at 326. The burden of litigating in multiple forums was just one factor in the appellate panel's decision not to enforce the parties' choice of forum; this factor was not dispositive. *Id.* at 333. The panel held that enforcing the forum-selection clause on those facts would be at odds with the Supreme Court's decision in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). *Ibid.* The plaintiff in *Carnival* was an individual customer and the defendant an international cruise line. 499 U.S. at 588. The customer lacked "bargaining parity with the cruise line" because the forum-selection clause was part of a non-negotiable form contract included in the cruise company's ticket-purchase agreement. *Id.* at 593. The Supreme Court created the *Carnival* factors to address disputes over form contracts between parties with disparate bargaining power. *Id.* at 593–94.

Perdue's status as U.S. Security's customer does not dissuade us from enforcing the Maryland clause. What might be a colorable argument from an ordinary customer falls flat when made by a business titan. Unlike in *Farm Bureau*, nothing in the record suggests Perdue is an unsavvy customer unable to protect its interests in an arm's-length negotiation with a business counterparty. Perdue is not David; U.S. Security is not Goliath. We are unwilling to extend *Farm Bureau* to disputes between commercial parties.

3

Third, commercial parties are best suited to anticipate and assess the benefits and burdens of doing business in multiple jurisdictions. And that includes the risks of litigating disputes across many venues. Without doubt multi-forum litigation can be costly. And litigating the same facts in more than one jurisdiction risks inconsistent judgments. But such uncertainties are a fact of life in today's business climate. Perdue should

have expected that possibility when it agreed to litigate in Maryland. "Duplicative actions are not entirely avoidable in a complex economy where multiple party dealings are the rule, not the exception, and disputes do not necessarily arise in a neat, bipolar fashion." *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1009 (Ind. Ct. App. 2005) (internal quotation marks omitted), trans. denied. As the dissent below observed, Perdue could have limited by contract its risk of "multi-jurisdiction discovery, inconsistent verdicts, and claim preclusion that are trotted out as a parade of horribles in its appellate brief." *Perdue Farms*, 217 N.E.3d at 1275 n.7 (Crone, J., dissenting).

We are also mindful that the parties' choice of forum, along with their choice of whether to litigate any disputes in court or in arbitration, may have been material terms in their private agreements. Such provisions may have "figured centrally in the parties' negotiations", "affected how they set monetary and other contractual terms", or been "a critical factor in their agreement to do business together in the first place." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 (2013). Granting Perdue relief may "disrupt the parties' settled expectations" and substitute our judgment for their own calculus for quantifying and controlling likely risks and costs. *Ibid.* Enforcing their choice of forum ensures that courts will not nix such agreements when one party, with the benefit of 20/20 hindsight, later regrets the bargain it struck. *Id.* at 66–67. We respect Perdue's and U.S. Security's freedom to choose their preferred litigation forum and hold their choice of forum is just and reasonable. Perdue has not met its heavy burden to show that the parties' choice of a Maryland forum would deprive Perdue of its day in court.

Next, we consider whether the forum-selection clause applies to Perdue's claims against the individual employees.

B

Contracts generally apply only to their signatories and to non-signatories in privity with a signatory. Under this rule, Perdue's claims against U.S. Security's three employees would not be subject to the forum-selection clause. The employees did not sign the agreement with Perdue, and they are not in privity with their employer, U.S. Security. If presented

with the right argument, we might be willing to enforce a forum-selection clause for employees in a case where claims against defendant employees arise from a contract between the plaintiff and their co-defendant-employer. But U.S. Security's and the employees' waiver counsels against deciding that issue here. Thus, we hold that the forum-selection clause applies to Perdue's claims against U.S. Security, but not to those against the employees.

1

"Generally, only parties to a contract or those in privity with the parties have rights under the contract." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996). If a non-party holds "a mutual or successive relationship with" a contracting party, or its "interests are so identical as to represent the same legal right", then the non-party is in privity with the contracting party. *ISP.com LLC. v. Theising*, 805 N.E.2d 767, 774 (Ind. 2004) (internal quotation mark omitted). As our court of appeals recognizes, a corporation's employees are separate from their employer and not subject to the employer's contractual rights or duties. *Ind. Dep't of Transp. v. McEnery*, 737 N.E.2d 799, 803 (Ind. Ct. App. 2000), trans. dismissed. And so an employee generally has no privity with the employer when the employee does not negotiate or execute the employer's contract. *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 730 (Ind. Ct. App. 1984).

U.S. Security and its employees acknowledge the employees are not parties to the security-service contract with Perdue. And the employees did not take part in negotiating or executing the Perdue contract. U.S. Security and its employees nonetheless argue the employees are in privity with their employer because their interests "are so identical [to U.S. Security's] as to represent the same legal right." *ISP.com*, 805 N.E.2d at 774 (internal quotation mark omitted). The employees' and U.S. Security's interests are supposedly "identical" for two reasons, but both contentions fail.

First, U.S. Security and its employees say that U.S. Security shares identical interests with the employees because the employees' allegedly negligent performance of job responsibilities arises from the service

contract with Perdue. Put differently, U.S. Security and its employees argue the employees are in privity with their employer because Perdue's negligence claim against the employees cites the employees' duties under the service contract. The problem is that U.S. Security and the employees cannot support their argument. They cite *Svindland v. TA Dispatch, LLC*, 195 N.E.3d 872 (Ind. Ct. App. 2022), but that case does not govern here. *Svindland* discusses which claims are subject to a forum-selection clause, not which parties are in privity. *Id.* at 874, 875–76 (holding forum-selection clause that applied to "any party seeking relief under or pursuant to" this agreement governed tort claims arising "pursuant to" the agreement). U.S. Security and its employees also cite *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004), but this case too is inapt. There, the Seventh Circuit held a forum-selection clause in one agreement applied to all parties involved in a "package" of many agreements. *Id.* at 889. But there is only one agreement here, and the employees are not parties to it.

Second, U.S. Security and its employees urge us to hold that employees and employers share identical legal interests in respondeat-superior actions because "the plaintiff seeks the same result—employer liability—and recovery is based on the same negligent act". *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1178 (Ind. 2017). But *Sedam* had nothing to do with privity. There, we held that the plaintiffs could not bring both respondeat-superior and negligent-hiring claims against the employer when the employer admitted its employees acted within the scope of employment. *Ibid.* We reasoned that permitting a "negligent hiring claim becomes duplicative" once the employer admits liability for the employee's actions under respondeat superior "since a plaintiff may not recover twice for the same damage." *Ibid. Sedam* governs what claims a tort plaintiff may bring against an employer; it says nothing about whether employees and employers facing respondeat-superior claims are in privity.

In sum, the cases U.S. Security and its employees cite ultimately point in the opposite direction. Under a traditional privity analysis, the forum-selection clause does not apply to Perdue's claims against the employees.

Perdue's strategic pleading here highlights how a plaintiff may seek to avoid a presumptively valid forum-selection clause: sue both the employer and its employees and allege individual and respondeat-superior liability. If the court enforces the forum-selection clause against the employer, the argument goes, claims against non-contracting employees arising from the contract are exempt from the forum-selection clause.

The party relying on the forum-selection clause may respond to such pleading gamesmanship by invoking the "transaction participant" doctrine. See *Svindland*, 195 N.E.3d at 874–76 (applying transaction-participant doctrine to permit non-contracting employees to invoke a forum-selection clause); *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 444 (Tex. 2017) (noting Texas intermediate appellate courts apply the transaction-participant doctrine). Under this doctrine, courts apply forum-selection clauses to non-signatories who are "transaction participants", meaning those who "are closely related to the contractual relationship." *Pinto Tech. Ventures*, 526 S.W.3d at 444 (internal quotation mark omitted). That "includes an employee of one of the contracting parties who is individually named by another contracting party in a suit arising out of the contract containing the forum selection clause." *Ibid.* (internal quotation marks omitted). The idea behind the doctrine is that enforcing the clause against non-signatory transaction participants reflects the contracting parties' expectations about where disputes arising from the contract will be litigated. *Id.* at 444–45 (citing *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013)).

Our concurring colleague identifies two alternative theories for extending forum-selection clauses to non-signatories: the closely related doctrine and intertwined-claims estoppel. *Post*, at 1–2. We address neither theory here because the parties' briefs did not mention them. We address the transaction-participant doctrine only because U.S. Security and its employees mentioned the doctrine during appellate briefing in a footnote discussing a court of appeals opinion, *Svindland*, 195 N.E.3d at 874.

Though U.S. Security and its employees mentioned the transaction-participant doctrine, they did not argue in the trial court or on appeal that

the doctrine applies here. They sought relief only under a privity theory and so waived any argument based on the transaction-participant doctrine. *Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 907 (Ind. 2024). Thus, we do not rely on the doctrine here as a ground for applying the forum-selection clause to the employees. We hold instead that the forum-selection clause applies only to Perdue's claims against U.S. Security.

\* \* \*

For these reasons, we affirm the trial court's order dismissing Perdue's claims against U.S. Security for improper venue, reverse its order dismissing U.S. Security's three employees, and remand for further proceedings consistent with our opinion.

Massa, Goff, and Molter, JJ., concur.

Rush, C.J., concurs with separate opinion.

ATTORNEYS FOR APPELLANT PERDUE FARMS, INC.
Danny E. Glass
Adam S. Glass
Fine & Hatfield, PC
Evansville, Indiana

Gregory L. Mast
Stephen A. Kahn
Fields Howell, LLP
Atlanta, Georgia

ATTORNEY FOR APPELLEES U.S. SECURITY ASSOCIATES, INC.;
JENNIFER FREEMAN; BRIAN HILL; AND CARL NELSON
Edward M. O'Brien
Wilson Elser Moskowitz Edelman & Dicker LLP
Louisville, Kentucky

**Rush, C.J., concurring.**

I agree with the Court's conclusions that "the forum-selection clause is enforceable" and that U.S. Security and its employees failed to present us "with a viable argument for applying the forum-selection clause to the non-party employees." *Ante* at 5. As for the second conclusion, we were not provided with a supported legal basis for finding the three employees to be in privity with U.S. Security solely for enforcing one contractual provision. But, absent privity, several courts have used theories based on equitable-estoppel principles to allow non-signatory defendants to enforce forum-selection clauses. The Court highlights one such tool—the "transaction-participant doctrine." *Id.* at 11. I write separately to highlight two other doctrines that might also prevent a signatory plaintiff, such as Perdue, from circumventing a valid forum-selection clause through strategic pleading.

The "closely related doctrine," which is similar to the transaction-participant doctrine, permits "non-signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022) (quoting *Fasno v. Li*, 47 F.4th 91, 103 (2d Cir. 2022)). Courts use different, context-specific factors when determining whether a non-signatory is closely related, including "common ownership, involvement in the agreement's negotiations, signatory status of the party opposing the forum selection clause, the type of claims and allegations at issue, control by secret principals, the posture of the case, direct benefits received, and awareness of the agreement and its relevant terms." *Id.* at 440. Because this doctrine allows a non-signatory to be bound by a forum-selection clause, it is not without its critics. *See, e.g.*, *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 321 (6th Cir. 2024). But all federal circuit courts to consider the doctrine "have recognized it in one way or another," *Franlink,* 50 F.4th at 439, and the same is largely true for federal district and state courts, *Peterson v. Evapco, Inc.*, 188 A.3d 210, 231 n.13 (Md. Ct. Spec. App. 2018) (collecting cases).

"Intertwined-claims estoppel" (also referred to as the "intertwined-claims test") is narrower, focusing on the substantive nature of the claims in relation to the contractual obligations. Under this theory, a signatory plaintiff cannot avoid enforcement of a forum-selection clause "when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations." *Black v. Diamond Offshore Drilling, Inc.*, 551 S.W.3d 346, 354 (Tex. App. 2018) (quoting *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007)). In these circumstances, intertwined-claims estoppel precludes the signatory plaintiff "from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). Indeed, "allowing litigation to proceed that is in substance against a signatory though in form against a nonsignatory would allow indirectly what cannot be done directly." *Merrill Lynch*, 235 S.W.3d at 194. To that end, courts have permitted non-signatory employees to enforce a forum-selection clause when the claims against them were intertwined with the contract between their employer and the plaintiff company. *See, e.g.*, *Ex parte Int'l Paper Co.*, 285 So.3d 753, 764 (Ala. 2019).

In sum, the closely related doctrine and intertwined-claims estoppel—along with the transaction-participant doctrine—are equitable theories that non-signatory defendants can raise to enforce a forum-selection clause. Though our Court has yet to consider any of them, each has the potential to respect the contracting parties' expectations, prevent the evasion of forum-selection clauses through strategic pleading, and ensure related disputes are litigated in a single, predictable forum. *Cf. Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 525–26 (Ind. 2021) (declining to endorse alternative equitable-estoppel theories that "require no relationship—not even a cursory one—between the parties"). But because U.S. Security and its employee have relied only on privity, it would be improper for us to either consider or invoke theories based on equitable-estoppel principles. I therefore concur.